## McADON v. TIMES PUB. CO.   (No. 1737.)

(Court of Civil Appeals of Texas. El Paso. April 16, 1925. Rehearing Denied May 14, 1925.)

1. **Master and servant** ☞330(3)—Evidence held to show driver of truck was not employee of owner.

Evidence *held* to show that driver of truck striking plaintiff was not an employee of owner thereof, but was driving for himself, against wishes of employee who was authorized to use it, and who was at time of accident on a mission for owner.

2. **Master and servant** ☞301(1)—Owner of truck, driven by person acting for himself against wishes of driver, held not liable for injury.

Owner of truck striking plaintiff *held* not liable, where it was being driven by person who was acting for himself and against wishes of driver of truck authorized to use it, and who was unauthorized to permit another to assist in driving.

3. **Trial** ☞250—Refusal of charge, whether truck driver used ordinary care to obtain complete control thereof at time of accident, held not erroneous under pleadings and evidence.

In action for injuries sustained by plaintiff when struck by truck, refusal of charge that,

---

if truck was not being operated by defendant's driver at time of accident, jury should find whether he used ordinary care to obtain complete control thereof, was not erroneous, where neither the pleadings nor evidence suggested such issue; Rev. St. arts. 1984, 1985, being inapplicable.

**4. Master and servant ⬤➡301(1)—Liability of owner of truck striking plaintiff did not depend on driver's lack of care in rescuing control thereof from another.**

Liability of owner of truck striking plaintiff *held* not to depend on any want of care of driver in rescuing control thereof from one who had voluntarily assumed its control, especially where it was not shown that he had put such other in control, or that to do so was a part of his service to owner.

**5. Trial ⬤➡250—Refusal of charge whether driver could have stopped truck prior to accident held proper under pleadings and evidence.**

In action for injuries sustained by plaintiff when struck by truck, refusal of charge whether driver, by exercise of ordinary care, could have stopped truck prior to accident, was not erroneous, where not sustained by the pleadings and evidence.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Action by L. E. McAdon against the Times Publishing Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Burkett, Orr & McCarty and Sayles & Sayles, all of Eastland, for appellant.

G. G. Hazel and Conner & McRae, all of Eastland, and L. R. Pearson, of Ranger, for appellee.

WALTHALL, J. L. E. McAdon, appellant, brought this suit against the Times Publishing Company appellee, a corporation, to recover damages for personal injuries which he alleges he sustained by reason of the negligence of the appellee, its agents and representatives, in the operation of an automobile, a Ford roadster, belonging to appellee.

Appellant alleges that while in the act of crossing a street in Ranger, Tex., he was struck, knocked down, and injured by the Ford roadster then "being run and operated and in charge of an agent and representative of" the appellee.

The negligent acts assigned are that, at the time of the accident causing his injuries, said automobile was being operated and run in an unlawful and high rate of speed; that it failed to give notice of its approach by any signal; that it failed to diminish its speed upon its approach to appellant, and negligently and carelessly ran the automobile against and over appellant, thereby causing the injuries complained of. Appellant alleges that he was without fault or negligence contributing in any manner to the accident caus-

ing his injuries. He alleges the injuries received, his earning capacity, and alleges his loss and damages in the sum of $10,000.

Appellee answered by general denial, and by special answer denied that it or any agent or representative of it was, operating or in charge of the operation of the Ford roadster alleged to have been the cause of appellant's injuries, and denied that the person in charge of said automobile at the time of appellant's injuries was its agent, representative, or employee, and had no authority from appellee to run or operate said car, and that said person, in operating said automobile, was not engaged on any mission for appellee, and was not in lawful possession and use of said automobile at the time complained of by appellee. Appellee alleged that appellant was himself negligent, and specified the negligent acts, but they are not involved as issues here, and we need not further state them.

Appellee, further answering, impleaded the London Guaranty & Accident Company, Limited, of London, alleging that it held a policy of insurance of said company, insuring appellee against loss for damages for injury sustained or occasioned to any person on account of the operation of the automobile, but none of the issues between appellee and the said insurance company are involved here, and we need not further refer to either.

The case was tried by a jury, and submitted upon special issues. On the facts found by the jury, judgment was rendered in favor of appellee.

### Opinion.

The facts submitted to the jury and upon findings made, abbreviated, are substantially as follows: The Ford truck, at the time of the accident causing the injuries to appellant, was not then being operated by Aubrey Niven, nor by James Smith, colored, nor was it being operated by Aubrey Nevin and James Smith jointly. The Ford truck, at the time of the accident was then being operated and run in an unlawful, reckless, and negligent manner, and at a high rate of speed. The driver in control of the truck at the time of the accident negligently failed to give notice of its approach by any signal. The driver of the truck at the time of the accident negligently failed to diminish the speed of the truck upon its approach to appellant.

The trial court submitted several other issues of fact to the jury but the jury made no findings upon them. Judgment in favor of appellee was entered upon the facts found as above.

All of the evidence in the case, without stating it here, tending to show who was in control of or operating the truck at the time of the accident indicated Aubrey Nevin, a white boy, and James Smith, a colored boy,

one or the other, or both, and there was no evidence tending to show that any other person was in the truck at the time of the accident.

The contention made by appellant under several propositions, in effect, is that, since the undisputed evidence shows that at and prior to the time of the accident no person was in or about the truck that caused the injury to appellant other than Aubrey Nevin and James Smith, no reasonable conclusion can be reached other than that the truck was being run or operated by either Aubrey Nevin or James Smith, or both.

The appellant's pleading did not indicate the name or names of appellee's agent or agents or representative or representatives.

The evidence shows that appellant was injured by coming in collision with the Ford roadster owned by appellee, then in the possession, use, and being operated by, Aubrey Nevin or James Smith, or both. The only evidence in the case showing the relation in employment of Aubrey Nevin and James Smith, or either, to the Times Publishing Company is that of C. F. Underwood and Frank Murray. Underwood was, at the time of the accident to appellant, the circulating manager of appellee. He testified:

"I know whether or not there's a negro by the name of Jim Smith that is working for the company. There was at that time. I know the extent of his authority and under whose control he was at that time. He was directly under control of the business manager of the paper—direct. I have supervision or charge over him or authority to make directions to him with reference to any matters pertaining to the use of the car, those that came under my department only. I don't remember this occasion of this negro Jim Smith going out on an errand. I don't remember that. The negro had no authority to permit others to use the car. I know a little boy that was over there at Ranger on that occasion, or at that time, by the name of Knevin or Kniven, or something like that. He was carrier delivery boy for the Times Publishing Company at that time. The nature and extent of his duties were the delivery of papers from 4:30 to 6 o'clock each afternoon. He was directly under my supervision and control. He went on duty at 4 o'clock. He was off duty about 6 o'clock generally. That is about when he completed his delivery each day. He was delivery boy of the daily paper. This injury is alleged to have happened between 1 and 2 o'clock, somewhere around there during the day. This boy was not in the employ of the Times Publishing Company at that time. This young man had no authority from me to use or operate the automobile. This boy delivered his papers on foot. * * * Jim Smith was in the employ of the company and in the service of the company along between 1 and 2 o'clock on July 17, 1922, so far as I know. If he had been instructed to go to the plant to get some ice for the company, and if he had done that very thing, gone to the plant and got some ice, that was within the scope of his employment. I don't know about any errand that he did ren-der on that day after some ice for the plant. I didn't give him those instructions. Mr. Murray or the bookkeeper had authority to give him instructions, or myself. * * * Jim Smith is in Eastland now. He is still working for the company."

Frank Murray, who testified on behalf of appellant, was an officer of appellee in July, 1922, when the accident occurred.

"The car that hit Dr. McAdon was a Times Publishing Company car. I do not know who was in the car on the day of the accident. * * * I know James Smith. He is a negro boy. * * * During July, 1922, James Smith was in the employ of the Ranger Times Publishing Company—Times Publishing Company. * * * His general line of work is that of cleaning the presses and make ready for the paper, and go on errands as he may be instructed to by the manager of the paper or any one in charge of the office at that time. * * * As to whether or not he would go on those errands in an automobile or afoot—it just depended on what the nature of the errand was. I don't know only by hearsay whether or not James Smith operated the Ford roadster of the Times Publishing Company on that day in July, 1922, when the accident occurred to Dr. McAdon. I don't know that he was instructed; I didn't see it, and all I know is what I heard since that time. I heard that from James Smith himself."

Here appellee's attorney took the witness for examination stating to the court that he did not waive his objection, but desired to examine the witness on what the negro did say. The court directed that the examination of the witness proceed. The examination did proceed before the jury under the direction of the attorney for appellee. The attorney for appellee said:

"I will ask you, Mr. Murray, to state to the jury just what the negro did state to you."

The witness said:

" * * * I called Jim in to sit down and tell me just about how this thing happened, and he said that, I think he said that Mr. Waterman, the manager, or some one in charge of the office there, told him to go to the Southern Ice & Utilities Company's plant and take the car and bring some ice for the mechanical room. On entering the car he found that one of the front tires had a puncture in it, or it was already punctured, and they told him possibly to go by the Hub City Garage and have the tire changed. On entering the car in front of the Times Publishing Company building, as he backed out, a boy that carried—supposed to have carried papers for the Times—ran and jumped up in the car, and says: 'I am going to ride over there with you,' and he drove over to the garage, and, as I understand him to say, he parked the car on the side by the garage by the curb. That would be the west side of the garage in front of the driveway or right next to the driveway, and when he stopped the car which was a Ford roadster, you can only get in and out on the right-hand side of the old models. This is the closed side [the wit-

ness indicating] and the boy got out of the car, and he got out of the car and went in the garage and got this extra tire that was there, and came back and put it on the left-hand front wheel. The car was headed north on Rusk street, and after he put on the repaired tire, and was strapping the other tire on the side, the boy got in the car and started the motor just as he was getting ready to go around the back end of the car to the side, and he started the car off and he had to run around the back of the car to get in after the car was down near the alley, which would be about 100 feet, * * * but any way he ran and caught it and got in, and he made an effort to stop the boy, and knowing that he didn't know how to drive it, or telling him not to drive it. In other words, he said he did everything within his power to take the car away from the boy, and it was while he was doing this that the accident occurred. * * * I believe he told me it was the Kneven or Kniven boy. I don't know where that boy is now. * * * He [James Smith] positively has been instructed from time to time to never permit or allow any one to drive the truck while in his charge."

[1, 2] It is quite clear from the evidence that the boy, Aubrey Nevin was not the agent, representative, or an employee of appellee in operating the Ford roadster at the time of the accident to appellant, and it is equally clear that the boy, James Smith, was an employee of appellee and had been put in possession of the Ford roadster by appellee at the time of the accident, to use the car in going after ice for the employer, and the question presented as to appellee's liability for his acts in his use of the truck in performing this service seems to be: Was James Smith, at the time of the accident in such possession and control of the truck as that the movement of the car was under his direction and control? The evidence shows that Aubrey Nevin was not in the car at the invitation of James Smith, nor was he, at his invitation, directing the movement of the car for or in any way at his invitation assisting James Smith in the movement of the car, or in the performance of James Smith's errand, nor was he a volunteer in rendering assistance to James Smith in driving the truck; but the evidence shows that Aubrey Nevin, in driving the car, was acting for himself and against the wishes of James Smith. The evidence shows also that the negro boy had been instructed never to permit any one to drive the car while in his possession. In the absence of express or implied authority in the employee to permit another to direct or assist in the direction of the movement of the car, the only safe and logical ground upon which to rest the liability of the owner of the car for the negligence of a volunteer assistant of his employee or servant is the negligence of the employee or servant in inviting or permitting a volunteer or stranger to the service to be performed

or assist in the performance of, the work intrusted to him. In the absence of such authority from the owner, there would be nothing to impute to the owner the negligence of the employee in the course of the performance of his service. However unfortunate or regrettable the accident to Dr. McAdon, there seems to us an entire absence of pleading and testimony, as shown by the record, upon which to base a recovery of damages against appellee.

We have perhaps discussed the question of the liability of the appellee beyond the issues tendered in the pleading and more along the line of the evidence, but it seemed advisable to do so to make clear our view of the extent of the liability of the appellee.

[3, 4] Appellant requested the submission of a special charge, in effect, that if the jury should find that the truck was not being operated by James Smith, at the time of the accident, then to find whether James Smith used ordinary care and reasonable diligence to obtain complete control of the truck at or immediately prior to the accident. To the refusal of the court to submit the issue, appellant assigns error. Appellant refers to articles 1984 and 1985, R. S. These articles do not sustain the contention made, for the reason that neither the pleadings of appellant nor the evidence offered suggest such issue; nor would the issue, if submitted and found in appellant's favor, in our judgment, render appellee liable. We do not think the liability of the appellee, in view of the evidence, would depend upon the question, even if pleaded, of any want of care or diligence of the negro boy in rescuing the control of the car from one who had voluntarily assumed its control, and especially would that seem to be so where it was not shown that he had put the boy in control of the car, or that to do so was a part of his service to his employer. The above, we think, is not in conflict with the case of Esposito v. American Ry. Express Co., 194 App. Div. 347, 185 N. Y. S. 353. We need not here review the case.

[5] Appellant requested the giving of a special charge requesting the jury to find whether James Smith, by the exercise of ordinary diligence, could have stopped the movement of the car prior to the accident.

Appellant did not assign as a ground of negligence that James Smith (or its agent or representative, not naming him) assumed such position on the car that by the exercise of ordinary care he could have stopped the movement of the car and failed to do so. Neither did the evidence justify the submission of the issue.

We have not specifically discussed all of appellant's propositions, but we have carefully reviewed and considered them, and have concluded that those not discussed are without merit.

The judgment of the court is affirmed.