Argued February 29, affirmed March 6, 1928.

## GEORGE NASH v. ERWIN BAUN ET AL.

(264 Pac. 846.)

Master and Servant—Employer of Chauffeur Held not Liable for Negligence of Those Renting Car, Taking Charge After Chauffeur Abandoned It.

When chauffeur employed by one renting automobile for hire, while in charge of employer's automobile, abandoned it, and renter of car took charge and thereafter negligently collided with car of plaintiff, chauffeur's employer *held* not liable for such negligent act.

---

Agency, 2 C. J., p. 685, n. 32.
Master and Servant, 39 C. J., p. 1268, n. 45, p. 1272, n. 83, p. 1273, n. 91.
Motor Vehicles, 42 C. J., p. 1095, n. 41, p. 1096, n. 49.

From Polk: W. M. RAMSEY, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Guy O. Smith.*

For respondent there was a brief and oral argument by *Mr. Harry Ballinger.*

ROSSMAN, J.—The questions presented to us arise upon a demurrer to the complaint. The demurrer is based upon the contention that the complaint fails to state facts sufficient to constitute a cause of action. It alleges that defendant Baun was the owner of a Ford touring car kept by him for the purpose of letting it for hire, and that May 2, 1925, Ray Stalmaker and Harold Dickenson, whom we shall hereafter refer to as the "renters," applied to Baun for the use of the car. The complaint alleges that Baun agreed to hire the car to the renters and sent one Johnson with the automobile as a driver. Continuing, it is alleged that Baun directed Johnson not to permit either of the renters to drive the car, but instructed Johnson to drive the car any place that the two men might designate. It is alleged that shortly after Johnson undertook his task, he voluntarily permitted the renters to assume control of the automobile, and "to continue on the journey unattended by" Johnson. The complaint further alleges that some time thereafter, when the car was being operated by the defendant Dickenson, he drove it in such a negligent manner that it collided with the automobile of the plaintiff. It is averred "that all of said times the above automobile was under the control and management of the defendants Dickenson and Stalmaker." The specifications of negligence are to the effect that Dickenson drove upon the wrong side of the roadway; that he was unable to control the car; that he did

not drive with due regard to the safety of the public; that he was intoxicated; that his speed was excessive, and that the car was not properly equipped with brakes. Finally, the complaint alleges "that by reason of the carelessness and negligence of the said defendants Stalmaker and Dickenson in the operation of said automobile as particularly described," the plaintiff's car was damaged. It will be observed from the foregoing that Johnson permitted Stalmaker and Dickenson "to continue on the journey unattended" by Johnson.

Forming a part of the plaintiff's brief we find a prelude entitled "statement," wherein is set forth: "the three parties had hardly left the city limits of Independence when Johnson was requested by Stalmaker and Dickenson, to permit them to take charge of the automobile and to drive it themselves and for Johnson to accompany them no further. To this Johnson voluntarily assented, turned the automobile over to Stalmaker and Dickenson, and returned to Independence." The sole question presented to us is: When the chauffeur in charge of the employer's automobile abandons it and some third person takes charge and thereafter negligently injures the plaintiff, is the employer liable for such negligent act?

From the foregoing we must accept it as a fact that Johnson was the defendant Baun's agent. The principles of law applicable to the facts before us are old and well established. In Mechem on Agency, Section 1866, we find:

"But in order to make the master liable, under the doctrine of *respondeat superior,* it is necessary to show that the act complained of was done by the master's servant, or by someone whom the servant was authorized to employ, or that the injury com-

plained of was, under the doctrines governing legal cause, the consequence of some act or omission on the part of the master's servant.''

"It is the general rule, as has been more fully seen in an earlier chapter, that an agent has ordinarily no implied authority to delegate the performance of his duties to a subagent or to employ other agents on his principal's account. The same rule applies also to a servant.''

In Section 1867, Mr. Mechem states:

''Even although it cannot be held that there was express or implied authority for the delegation of the service within the rules of the preceding section, there may undoubtedly be cases in which the act in question is rightfully to be deemed to be the act of the servant, and therefore imposing liability upon the master, notwithstanding that the physical act of some third person, volunteering or requested to give aid to the servant, has actually intervened. Where the servant himself is actually in control, supplying the will and the motive, the act may be regarded as the act of the servant himself,—and if negligent, as his negligence,—even though the servant has exercised or permitted to be exercised, the physical act of a third person, instead of some other instrumentality or appliance which might otherwise have been available and permissible. Where the act which the servant thus causes or directs is in itself negligent, there could ordinarily be little doubt of the liability; but even where the fault lies rather in the manner in which the person so used has done the act, the liability may attach.''

''The limits of this doctrine must be narrow: it can probably be applied only when the servant is actually directing and controlling the act, and so personally and immediately in charge that the act of the third person may fairly be regarded as the act of the servant.''

''The main act itself must also, in any event, be an act within the scope of the servant's employment.''

An illustration of the situation suggested by the foregoing rule is that dealt with in *Simons* v. *Monier,* 29 Barb. (N. Y.) 419. A servant was engaged in clearing some land and burning some brush; his boy was helping him and set a fire. This was held the act of the principal.

Plaintiff relies upon Section 1279, Berry on Automobiles (5 ed.). The statements contained in the text seem to support plaintiff's contention that the acts of Dickenson are the acts of Baun. We have, however, read all the cases cited in the footnotes and find that all, except one, are not unlike in principle to *Simons* v. *Monier, supra.* In all, except one, the employee was operating his employer's automobile: temporarily the employee permitted a volunteer assistant to take charge of the steering-wheel or the operation of the car. In this group of cases the employee did not leave the car. While they were thus proceeding, the volunteer committed a negligent act which caused an injury to the plaintiff. The employer was held liable by reason of the principles of law we have already mentioned. One of the cases is *Slothower* v. *Clark,* 191 Mo. App. 105 (179 S. W. 55). Defendant's chauffeur, while engaged upon the defendant's business, took into the car with him a friend, and permitted the latter to take charge of the steering-wheel, he sitting beside him. While the car was thus being operated, it collided with the plaintiff. The court held the defendant liable, saying: "When the chauffeur let Sweeny take the wheel, he remaining on the seat beside him, Sweeny's acts, practically speaking, were his, and his act in turning the wheel over to Sweeny, was the act of defendant, for it was done in the defendant's service and while carrying out the chauffeur's employment. It was not the act

of a servant abandoning his master's service and turning it over to another.''

In *Prince* v. *Taylor* (Tex. Civ. App), 171 S. W. 826, the facts were quite similar; the chauffeur permitted his master's minor son to take charge temporarily of the operation of the family car. The master was held liable. To similar effect see *Mercer* v. *Rosenblath,* 156 La. 249 (100 South. 414); *Jones* v. *Lozier,* 195 Iowa, 365 (191 N. W. 103); *Geiss* v. *Tevin City Taxicab Co.,* 120 Minn. 368 (139 N. W. 611, 45 L. R. A. (N. S.) 382); *Collard* v. *Beach,* 81 App. Div. 582 (81 N. Y. Supp. 619); *Thomas* v. *Lockwood Oil Co.,* 174 Wis. 486 (182 N. W. 841); *Langan* v. *Nathanson,* 161 Minn. 433 (201 N. W. 927); *Gates* v. *Daley,* 54 Cal. App. 654 (202 Pac. 467).

But, where the servant abandons the task, and a stranger takes charge, the result seems otherwise in the type of work we are now dealing with. Thus in *James* v. *Muehlebach,* 34 Mo. App. 512, the court said:

''If a servant in charge of his master's carriage should take a stranger with him into the driver's seat, hand him the reins and tell him to drive at a run, and an injury happen in consequence of the speed, the master must answer for the damage, for the negligence was that of his servant. But, not so if the servant had quit the carriage and substituted the stranger in charge, generally, in his stead, without the knowledge of the master. For, if an injury happen it is not the act of the servant for whom only is the master liable.''

In the much cited case of *Booth* v. *Mister,* 7 Car. & P. 66, a servant in charge of his master's cart gave over the reins to one in the cart with him, an injury happening in consequence of the negligent driving the master was made to respond, Lord ABRINGER said:

"As the defendant's servant was in the cart, I think that the reins being held by another man makes no difference. It was the same as if the servant had held them himself."

In *McAdon* v. *Times Pub. Co.* (Tex. Civ. App.), 272 S. W. 814, cited by Berry, the facts are in some respects similar to our situation. The driver of the car had temporarily left his seat; a volunteer by the name of Nevin took charge and began the operation of the car; before the driver could resume control a negligent act of Nevin caused an injury to the plaintiff. The employer was held not liable.

"It is quite clear from the evidence that the boy, Aubrey Nevin was not the agent, representative, or an employee of appellee in operating the Ford roadster at the time of the accident to appellant, and it is equally clear that the boy, James Smith, was an employee of appellee, and had been put in possession of the Ford roadster by appellee at the time of the accident, to use the car in going after ice for the employer, and the question presented as to appellee's liability for his acts in his use of the truck in performing this service seems to be; was James Smith, at the time of the accident in such possession and control of the truck as that the movement of the car was under his direction and control? The evidence shows that Aubrey Nevin was not in the car at the invitation of James Smith, nor was he, at his invitation, directing the movement of the car for or in any way at his invitation assisting James Smith in the movement of the car, or in the performance of James Smith's errand, nor was he a volunteer in rendering assistance to James Smith in driving the truck; but the evidence shows that Aubrey Nevin, in driving the car, was acting for himself and against the wishes of James Smith. The evidence shows also that the negro boy had been instructed never to permit any one to drive the car while in his possession. In the absence of express or implied authority in the em-

ployee to permit another to direct or assist in the direction of the movement of the car, the only safe and logical ground upon which to rest the liability of the owner of the car for the negligence of a volunteer assistant of his employee or servant is the negligence of the employee or servant in inviting or permitting a volunteer or stranger to the service to be performed or assist in the performance of the work entrusted to him. In the absence of such authority from the owner, there would be nothing to impute to the owner the negligence of the employee in the course of the performance of his service. However unfortunate or regrettable the accident to Dr. McAdon, there seems to us an entire absence of pleading and testimony, as shown by the record, upon which to base a recovery of damages against appellee."

In *Martin* v. *Maxwell-Brisco etc. Co.,* 158 Mo. App. 188 (138 S. W. 65), *Wooding* v. *Thom,* 209 N. Y. 583 (103 N. E. 1135), and *Dalrymple* v. *Covey Motor Co.,* 66 Or. 533 (135 Pac. 91, 48 L. R. A. (N. S.) 424), cited by plaintiff, the facts before the courts were substantially these: A salesman or demonstrating chauffeur in the employ of an auto sales company, induced a prospective buyer to do an act in the course of the demonstration or sale of an automobile; in the last of the three cases a salesman was driving the buyer home in the newly purchased automobile. In each case the question was, to whom should the act be chargeable which brought to the plaintiff the injury. We do not believe that an analysis of this problem and of cases involving these facts will be of any practical service in the solution of our problem.

In Huddy on Automobiles (8 ed.), Section 200, we find:

"The owner of an automobile who has let it to another is not generally responsible for any negligence of the latter in the operation of the machine.

A similar rule is applied when an owner merely loans a vehicle for the use of another. The same situation arises when a machine is rented to a driver although the rental is a percentage of the earnings of the machine.''

In our case there is no charge that the renters were intoxicated when the defendant or Johnson gave them charge of the automobile; there is no charge that the defective condition of the brakes was the proximate cause of the accident. As we have seen from the statement of the plaintiff, Johnson left the car at the request of the renters; Dickenson was not performing an act necessitated by any situation caused by the defendant or Johnson. The presumption of employment recognized in *Doherty* v. *Hazelwood Co.,* 90 Or. 482 (175 Pac. 849, 177 Pac. 432), has no proper place in this case; a presumption ''may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts.'' The complaint informs us upon the facts and from the information thus given we see that the presumption of employment is inapplicable. We know of no principle of law that would authorize fastening a liability on the defendant for Dickenson's acts.                              AFFIRMED.

RAND, C. J., and COSHOW and McBRIDE, JJ., concur.