Argued February 14; affirmed May 9, 1933

# KERNIN *v.* CITY OF COQUILLE

(21 P. (2d) 1078)

*Ray B. Compton,* of Roseburg (Ira B. Riddle, of Roseburg, on the brief), for appellant.

*Grant Corby,* of Coquille (J. Arthur Berg, of Coquille, on the brief), for respondent.

ROSSMAN, J. The complaint avers that April 17, 1927, the common council of the defendant municipality directed the mayor and the city recorder to enter into a contract with the plaintiff, binding him to drill a well for the city; that June 6, 1927, the plaintiff and those two officials executed a contract wherein the plaintiff agreed to drill a well sufficient in capacity to furnish the city with 100,000 gallons of "pure, potable water" every twenty-four hours. The contract, a copy of which accompanies the complaint, requires that after the well had been completed to the satisfaction of the contractor the city should test it. It then provides "if the tests so made between the time of the completion of said well

or wells to and including the first day of November, 1927, shall show that by aid of proper pumping equipment not less than 100,000 gallons of water per twenty-four pumping hours can be secured therefrom the said well or wells shall be thereupon accepted by the said city, and all casing therein become the property of the said city and on or before the 15th day of November, 1927, the said city shall pay to the contractor the sum of $5,000 in full of all claims of said contractor for drilling said well or wells and turning them over to the city properly cased. In the event that said tests shall show that the city is unable, with the aid of proper pumping equipment, to obtain a substantial 100,000 gallons of pure, potable water therefrom for twenty-four pumping hours the city may reject said well or wells, and in that event the contractor shall have the right within 60 days to remove all casing from said wells, and all rights of the contractor hereunder shall cease and be null and void, and the city agrees in that event never to use in any way said well or wells''.

The answer, after admitting the corporate character of the city, denied all other averments of the complaint. As a first further answer the city alleged that June 6, 1927, ''the common council of defendant city and this plaintiff arbitrarily caused to be executed by the mayor and city recorder on one part and the plaintiff on the other part'' a contract whereby the plaintiff agreed to drill a well for the city. A copy of that contract is attached to the answer. Its recitals and stipulations are the same as those contained in the copy attached to the complaint. The answer next avers: ''Said purported and pretended contract was and is ultra vires and void for the reason (1) that the common council of defendant city, its officers and

agents, did not prepare, make, adopt or cause to be made or adopted any specifications, details or estimates of the probable cost of drilling such well or wells, * * * wholly failed and neglected to advertise for bids to do such work and failed and neglected to let said proposed work to the lowest or any bidder whatever, and arbitrarily awarded to plaintiff said work at a price greatly in excess of the reasonable cost thereof without any competitive bid or bids whatever. (2) * * *'' As a second separate answer the city averred that the council of the defendant municipality agreed to pay the plaintiff $5,000 if he drilled a well for the city "sufficient in size and capacity and properly cased so as to furnish 100,000 gallons of pure, potable water to the inhabitants of said city each 24 hours pumping" and alleged: "That plaintiff failed to install proper casings in said well and used casings too small for the well and caused the same to be perforated so as to admit surface water, and the water of said well, particularly during the wet season, was subject to pollution and wholly unfit for consumption by the inhabitants of said city; that after several tests the common council of said city rejected said well and plaintiff removed a part of the casings therefrom and abandoned said well and said agreement then and there ceased and became null and void by virtue of the terms and conditions thereof; that long after plaintiff removed a part of the casings from said well and abandoned said project as a water supply for the city of Coquille, and during unusually and extremely dry weather in the late fall of 1929 the defendant city's regular water supply from Rink Creek reservoir having failed, the water superintendent of said defendant city, by the consent and advice of the city council, secured permission from E. A. Folsom, owner of the

premises upon which said well was situate, to install a temporary wooden pipe in said well and for a period of one month, from November 6 to December 6, 1929, to pump water from said well into the local reservoir * * *; that said defendant city did not make said well a part of its water system and did not at any time accept the same or sell water therefrom to the residents and inhabitants of said city, and immediately upon sufficient water accumulating in the regular Rink Creek reservoir, being the regular source of supply of water for said city, said defendant city ceased to use the water from said well * * *''.

The plaintiff filed demurrers to the two portions of the answer designated as first and second separate answers. They were overruled. He then filed a reply which admitted the execution of the contract June 6, 1927, but denied that the plaintiff possessed sufficient information to form a belief as to the truth or falsity of the other allegations set forth in the first separate answer, and therefore denied the same. Replying to the second separate defense, the plaintiff averred that he drilled a well and that in 1929 the city for one month used water pumped from it. It denied all other averments set forth in the second defense. Further replying, it alleged that the city ought not to be permitted to aver that the contract of June 6, 1927, is ultra vires or void; that the city failed to prepare specifications for the contemplated improvement; that it failed to advertise for bids; that the city rejected the well, and that the water was not pure because the city "for a substantial period of time, being approximately 30 days, pumped water from said water well into its general water works system and used the same for municipal purposes and sold the same to its inhabi-

tants and customers, and further * * * it was agreed by said defendant city that in the event of the rejection of said water well that said defendant city would never in any way use said water well".

The court sustained a demurrer to the portion of the reply which sought to invoke an estoppel. Later it overruled the plaintiff's motion for judgment on the pleadings.

Plaintiff's brief argues five assignments of error: (1) that the court erred in everruling plaintiff's demurrer to the first separate answer; (2) that the court erred in overruling plaintiff's demurrer to the second separate answer; (3) that the court erred in sustaining defendant's demurrer to the reply to the first and second separate answers; (4) that the court erred in overruling plaintiff's motion for judgment on the pleadings; and (5) that the court erred in directing a verdict for the defendant.

■ The charter of the city was granted to it by 1901 Special Laws of Oregon (page 439) and was amended by 1903 Special Laws of Oregon (page 289). Article XIV, section 4, of the charter provides: "No member of the common council shall during his term of office be interested in any contract the expenses of which are to be paid out of the city treasury; and all jobs or contracts for constructing, improving, repairing and ornamenting any place or object in the city, or out of it, the expenses of which are to be paid out of the city treasury, and the probable cost of which will exceed $100, shall be let out to the lowest responsible bidder, and be done according to the specifications furnished from the proper office or department of the city government, and which shall have been approved by the common council and made public at least ten days be-

fore the closing of the bids for such job or contract. Provided, the common council shall have the right to reject any and all bids''. Article XII, section 1, provides: ''For the purpose of maintaining existing water works and supplying the city with water, or constructing a new water works system, the common council shall have power to erect, maintain and operate works within and without the city limits, and may enter upon and condemn to the use of the city, in such manner as may be prescribed by ordinance, or by this act, so much land, within and beyond the limits of the city, for the erection, maintenance, operation and protection of such works as shall be covered by the same, and all reservoirs, springs, streams, trenches, pipes, and drains as may be necessary or desirable to be used in connection therewith * * *. The common council may employ such person or persons as it may deem fit to make surveys and estimates of such work; may enter upon private property for the purpose of making preliminary surveys and observations; may employ such person or persons for the construction of such works and all matters connected therewith as it may see fit, or may let the same by contract, in such manner as may be prescribed by ordinance. * * *''

The plaintiff, after arguing that article XIV confers upon the city a general power and that article XII grants to it power for a specific purpose, argues that since special grants are not controlled by general grants, the city, in letting the contract under attack, was not subject to the requirements of article XIV. That portion of the charter first provides that no member of the Coquille city council shall have any interest in any contract to which the city is a party. The purpose of that provision is wholesome and the wisdom of like charter provisions of other municipali-

ties has been many times demonstrated. Having thus excluded all city councilmen from effecting contractual relationships with the city, article XIV next provides how those shall be selected who may contract with the city for an expenditure of $100 or more of city funds. The provision requires (1) the appropriate city official must prepare specifications for the contemplated improvement; (2) the specifications must be submitted to and gain the approval of the city council; (3) they must be accessible to the public for ten days' time; and (4) the recipient of the contract must have been the lowest responsible bidder who submitted a proposal. The purpose of such charter provision has been too many times stated to need amplification. Their purpose is to conserve the public funds, to prevent recklessness in contracting for public improvements, and to prevent favoritism with its attendant evils. Article XII confers upon the city power to acquire and operate water and electrical plants. It will be observed that the exercise of these powers requires the city to enter into many contracts and expend large sums of money. Here, therefore, is a field of operations where the city needs the protection of the charter provision which we have just reviewed. Yet the plaintiff contends that article XII deprives the city of that protection. He relies upon the following words found in it: "The common council may * * * employ such person or persons for the construction of such works and all matters connected therewith as it may see fit, or may let the same by contract, in such manner as may be prescribed by ordinance". If full effect were yielded to his contention the city council could let a contract for the construction of a municipal water or electrical plant to one of its own members. In the transaction of our every-day affairs of life common prudence has

taught us to be cautious before concluding that another has thrown away valuable safeguards previously imposed upon a fiduciary for the protection of funds intrusted to his keeping. Hence, no litigant ought to expect us to hold that the city of Coquille, article XIV of whose charter affords protection against recklessness and favoritism, deprived itself of that protection unless he can point to language which would convince us if we were off the bench. Restrictions imposed in behalf of common honesty upon public bodies authorized to expend the taxpayers' money ought not to be frittered away by decisions based upon words of equivocal import. As we have seen, article XIV delineates the manner in which the city shall select those with whom it contracts when the contract involves the expenditure of $100 or more of city funds. Its language is applicable to all contracts and all fields of operation. Article XII concerns itself primarily with the grant of a power to the city to acquire, maintain and operate water and electrical plants. The language upon which the plaintiff relies is incidental, and, no doubt, was discovered only after a labored search. It nowhere indicates a purpose to repeal or modify article XIV. To us, it seems that the language upon which the plaintiff relies merely grants a freedom of contract so far as that freedom does not conflict with the restrictions imposed by article XIV. We are of the opinion that when the city council desired to exercise the power granted by article XII and thus incur in plaintiff's favor a liability to the amount of $5,000 for a well, it was required to pursue the course outlined in article XIV. It follows that we find no merit in this contention of the plaintiff.

■ Having placed the above construction upon the language of article XIV, we believe that it is self-evi-

dent that the doctrine of ultra vires is not applicable to this case. The city possessed ample power to enter into the contract the plaintiff seeks to enforce, but was required to select its contractor by a public call for bids. We shall later determine the validity of the contract, and pause now only for the purpose of observing that the doctrine of ultra vires is not applicable to any issue in this case.

██ It follows from the construction which we have placed upon articles XII and XIV that before the council could lawfully authorize its city officials to execute the contract which the plaintiff seeks to enforce, it should have pursued the course imposed upon it by article XIV. The answer alleges that these charter requirements were not observed. The reply avers that the plaintiff does not possess sufficient information to enable him to determine whether to admit or deny these averments, and that he, therefore, chose to deny them. If the contract was entered into in the manner prescribed by law, documents were filed in public offices where they were available to the plaintiff when he executed the contract, and where they remained when he prepared his reply. There was available to him, therefore, as much information when he prepared his reply as was available to the city when it prepared its answer. A pleader cannot avow ignorance of a matter recited in the public records to which he has ready access, and, hence, an averment that he lacks sufficient information concerning such matters presents no issue. Clark on Code Pleading, p. 404; 49 C. J., Pleading, p. 265, § 333; 21 R. C. L., Pleading, p. 458, § 23. It is true that this portion of the reply was not stricken, and remains as a part of the reply. Nevertheless, we are of the belief that this portion of the reply should be ignored, being nothing more than an

effort to evade answering. *Goldwater v. Oltman,* 210 Cal. 408 (292 P. 624, 71 A. L. R. 871); *Dahlstrom v. Gemunder,* 198 N. Y. 449 (92 N. E. 106, 19 Ann. Cas. 771); *State v. Mueller* (Mo.), 51 S. W. (2d) 8; *Deseret Savings Bank v. Walker,* 78 Utah 241 (2 P. (2d) 609); *Imlay v. Gubler,* 77 Utah 547 (298 P. 383).

■ We conclude from the foregoing that the city's averment that the requirements of article XIV were not observed when the alleged contract was effected are admitted by the plaintiff. We shall now determine the effect upon the alleged contract of a violation of these charter requirements. In *Twohy Bros. v. Ochoco Irrigation Dist.,* 108 Or. 1 (210 P. 873, 216 P. 189), this court carefully considered the validity of a contract effected in the name of a city in violation of a statute requiring a public invitation for bids. The requirements of that statute were not substantially unlike those of article XIV of the Coquille charter. We there held that the requirement for a public invitation for bids preceding the letting of the contract was not merely permissive, but was mandatory. The decision pointed out that since the requirements of the act were mandatory, the public officers had no right to disregard them, and that, therefore, the alleged contract was void. We have again bestowed careful consideration upon the principles of law applicable to the issue, but remain satisfied that a contract effected in the city's name, without substantial obedience to the requirement demanding an invitation for bids, renders the contract void. The language of Mr. Justice Brown in the decision just cited needs no amplification. We, therefore, conclude that the contract which the plaintiff seeks to enforce imposes no duty upon the city.

■ The plaintiff next contends that the pleadings indicate that the defendant accepted the well, and that,

hence, it should be estopped to assert the invalidity of the contract. It will be observed from the foregoing review of the pleadings that the city admits that for a period of one month during a severe drouth it used water pumped from this well. It is this admission upon which the plaintiff relies to establish the contention which we shall now consider. It will be recalled that this is not an action upon an implied contract, but that it is an action upon an express contract. We have already held that the contract is void. We quote from McQuillin, Municipal Corporations (2d) § 1283: "The general rule is that if a contract is within the corporate power of a municipality but the contract is entered into without observing certain mandatory legal requirements specifically regulating the mode in which it is to be exercised, there can be no recovery thereunder. If a statute or charter says that certain contracts must be let to the lowest bidder, or that they must be made by ordinance, or that they must be in writing, or the like, there is a reason therefor based upon the idea of protecting the taxpayers and inhabitants, and these provisions are mandatory, and while it is undoubtedly true that mere irregularities in making the contract are not fatal to a recovery, yet if the contract is entered into or executed in a different manner, the mere fact that the municipality has received the benefits of the contract which has been performed by the other party does not make the municipality liable, either on the theory of ratification, estoppel or implied contract, in order to do justice to the other party by paying the reasonable value of the property or services". See also McQuillan, Municipal Corporations (2d Ed.) § 1298, and 44 C. J., Municipal Corporations, p. 324, § 2490. Where mandatory restrictions upon the contracting power of a municipality intended to safeguard

the interests of the city were disregarded when the contractor and municipal officers effected the contract, this court has consistently denied recovery against the municipality, even though the city made use of the improvement constructed by the contractor: *Twohy Bros. v. Ochoco Irrigation District.*, supra; *White v. City of Seaside,* 107 Or. 330 (213 P. 892); *Springfield Milling Co. v. Lane County,* 5 Or. 265. We conclude that the admissions of the municipality that for a period of one month it pumped water from the well does not afford a premise for a recovery in this action.

■ Next, the plaintiff contends that since the contract provides that the municipality shall never use the well he became entitled to recovery when it appeared that the city had actually used it. However, this provision of the contract is as void as the other portions of the contract. Moreover, a violation of this provision of the contract, if valid, could entitle the plaintiff to the recovery of only such damages as he sustained through a violation of it.

■■ The above disposes of the first four assignments of error, and there remains only the fifth which contends that the court erred when it directed a verdict in favor of the city. The plaintiff does not argue that the transcript of evidence submits any testimony in support of his claim, but relies upon (1) a recital in the contract that the mayor and recorder executed it "pursuant to resolutions of its common council duly adopted in accordance with the provisions of its charter"; and (2) the disputable presumption recited in section 9-807, subd. 15, Oregon Code 1930, that "official duty has been regularly performed". It will be observed, however, that the recital in the alleged contract is nothing more than the statement of the mayor and the recorder.

The city's pleading, admitted by the plaintiff's reply, alleges that the contract was executed in violation of article XIV. It is evident, therefore, that no effect should be given to these recitals. The presumption that official duty has been regularly performed can have no place in this action where the city alleges, and the plaintiff admits, that the official action was not regularly performed. In *Nash v. Baun,* 124 Or. 485 (264 P. 846), we quoted the language of another wherein he stated: "A presumption 'may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts' ". We believe that observation is applicable to this case. There can be no room for a presumption that the contract was validly executed when the party who seeks to enforce it admits that it was not.

The judgment of the circuit court will be affirmed.

BELT and KELLY, JJ., concur.

RAND, C. J., did not participate.