Benjamin S. MESIROW, Trustee under Trust Agreement known as Trust No. 140 in behalf of all beneficiaries of his trust, namely J. Lee Hackett Co., Charles J. Green, and Earl Hart Woodworking Machine Co., Appellant,

v.

Jerome F. DUGGAN, Trustee of National Aircraft Corporation, Subsidiary Debtor, Appellee.

No. 15519.

United States Court of Appeals Eighth Circuit.

Feb. 4, 1957.

Rehearing Denied March 7, 1957.
Further Rehearing Denied, Opinion Modified April 15, 1957.
See —— F.2d ——.

752

Israel Treiman and Elihu M. Hyndman, St. Louis, Mo. (Jacob M. Lashly and Lashly, Lashly & Miller, St. Louis, Mo., were with them on the brief), for appellant.

Eugene M. Munger and George O. Durham, St. Louis, Mo., for appellee.

Before GARDNER, Chief Judge, and VAN OOSTERHOUT and WHITTAKER, Circuit Judges.

WHITTAKER, Circuit Judge.

The overriding equitable issue involved in this appeal is whether a bankruptcy trustee can, in conscience, be permitted, over the protest of an innocent purchaser, to retain both the real estate offered at auction, and the money paid for it by such innocent purchaser, at a void sale.

On December 27, 1943, Christopher Engineering Company, a corporation doing business in St. Louis, Missouri, filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., in the United States District Court for the Eastern District of Missouri (hereafter called the Missouri Court), and, on that day, the petition was approved as properly filed, and Jerome F. Duggan was appointed Trustee.

About a month later, January 21, 1944, creditors filed an involuntary petition in ordinary bankruptcy against National Aircraft Corporation, an Indiana Corporation, doing business at Elwood, in Madison County, Indiana, in the United States District Court for the Southern District of Indiana (hereafter called the Indiana Court). That petition being unopposed, the Indiana Court adjudged National a bankrupt on February 7, 1944, and referred the matter to a referee, and the following day James C. Sansberry was appointed Receiver, and at the first meeting of creditors, on March 7, 1944, Sansberry was elected Trustee in Bankruptcy for National.

On February 28, 1944, the Referee appointed appraisers to value National's tangible personal property and its real estate, and, on March 22, 1944, they filed their report in which they valued its tangible personal property at $24,053.50, and the real estate in question at $23,000.00.

On March 21, 1944, Sansberry, Trustee, filed a petition for an order to sell said tangible personal property and real

estate at public auction, free of liens. That petition was considered at a meeting of creditors, on April 4, 1944, and, there being no objection, the Referee entered an order on April 6, 1944 directing that said property be offered for sale, free of liens, at public auction on National's premises in Elwood, Indiana at 9:30 A.M. on April 20, 1944. Wide publicity of the impending sale was given.

On April 19, 1944, the day before the sale, a petition was filed on behalf of National in the reorganization proceeding of Christopher then pending in the Missouri Court, alleging that National was a wholly owned subsidiary of Christopher, and asking reorganization, in that proceeding, under Chapter X, as a subsidiary debtor, and, on that day, that Court, *ex parte*, entered a decree finding National to be a wholly owned subsidiary of Christopher, and finding the petition to have been properly filed in good faith, and approving the petition, and appointing Duggan as Trustee for National, as a subsidiary debtor, and enjoining Sansberry and his auctioneer from selling National's property. The next morning, April 20, and before the sale, copies of the decree and injunction of the Missouri Court were served upon Sansberry and the auctioneer at Elwood, Indiana; but they proceeded with the sale.

At the sale Charles J. Green, of Chicago,—without any knowledge of the decree and injunction of the Missouri Court, entered the day before—bid $18,750 for the real estate in question, which was the highest bid for that property, and on that day he paid to Sansberry, as Trustee, $5,000.00 as earnest money, and went home—properly understanding that the sale was subject to confirmation, and, if confirmed, to the furnishing of evidence of good title in National, and, when done, that the balance of the purchase price would be payable in exchange for a valid trustee's deed conveying the real estate. The tangible personal property was sold to sundry others for an aggregate of $36,565.00 at the sale.

The next day, April 21, Sansberry, as Trustee, filed with the Referee his report of sale in which he made reference to the decree and injunction of the Missouri Court of April 19. On May 3, the Referee entered an order approving and confirming the sale of the real estate to Charles J. Green for $18,750.00, and also approving the sale of the tangible personal property to others for the sum of $36,565.00.

Charles J. Green's bid for the real estate had been made on behalf of himself and J. Lee Hackett Co. and Earl Hart Woodworking Machine Co. (who, as a group, frequently made similar purchases), and, upon returning to Chicago, he advised Benjamin S. Mesirow, the group's attorney, that he had purchased this real estate for the group for $18,750.00 and had paid $5,000.00 down, and thereupon, and following their usual practice, Mesirow prepared an indenture of trust, called Trust No. 140, appointing Mesirow as Trustee to take title to, and to manage, this real estate, and setting forth the several interests, rights and liabilities of the beneficiaries of the trust, which was duly executed.

Thereafter, as contemplated, Sansberry, Trustee, furnished abstracts of title, including a later requested supplemental abstract certified to May 12, 1944, covering this real estate. Though those abstracts made reference to and summarized Sansberry's report of sale of April 21, they made no reference to that part of it which mentioned the decree and injunction of the Missouri Court of April 19; nor did those abstracts make any mention of the fact that a copy of the Missouri Court's decree and injunction of April 19, had been recorded in the office of the Recorder of Madison County, Indiana, on May 5, 1944—which may be explained by the fact that said recorded instrument was captioned, "In The Matter of Christopher Engineering Company, a Corporation, Debtor."

Mesirow then had those abstracts examined by a lawyer at Elwood, Indiana, who rendered an opinion stating that National had good and merchantable title

to this real estate, and that the sale had been regularly held and confirmed in the Indiana bankruptcy proceeding, and that a deed by Sansberry, as Trustee for National, to Charles J. Green or his nominee, would convey good title to the real estate.

Thereafter, Mesirow advised Sansberry that, though Green had made the bid for this real estate, title was to be taken in the name of Mesirow, as Trustee, and, thereupon, Sansberry prepared an instrument to be signed by Green, directing that the conveyance be to Mesirow as Trustee, which was signed by Green and returned to Sansberry, and, thereafter, Mesirow, as Trustee of Trust No. 140, paid to Sansberry, as Trustee of National, the balance of the purchase price for this real estate of $13,750.00, and on June 15, 1944, Sansberry, as Trustee of National, made and delivered his Trustee's deed, conveying this real estate to Mesirow, as Trustee of Trust No. 140, and the latter caused the same to be recorded in Madison County, Indiana on June 29, 1944.

Mesirow then took over possession of the real estate, which was in a poor state of repair, put a watchman in charge at a wage of $32.50 per week (which, to May 1, 1946, aggregated $1,348.64), made minor repairs to the floor and stairs at a cost of $46.50, paid water bills amounting to $75.15, and engaged a broker to search for a tenant for the property, who finally, in March, 1945, negotiated a lease with a responsible tenant, beginning May 1, 1945 (but it would appear that the tenant took possession the first of April, as it paid rent for that month), and ending December 31, 1946, at a rental of $1,250.00 per month (less $35.00 per month for a small outbuilding reserved by Mesirow, or at a net rental of $1,215.00 per month), but by the terms of the lease, the lessee agreed to repair the roof at a cost of $3,450.00 and to deduct that sum from the first rents to accrue. Mesirow paid the broker a commission of $1,200.00 for negotiating that lease, and, to May 1, 1946, paid $1,600.00 in insurance premiums upon the property. Thus, to May 1, 1946, the monies paid out by Mesirow, as purchase price, lease commission, insurance premiums, watchman service, minor repairs and water bills, aggregated $23,020.29, against which he had received rents (including the rental value of the reserved outbuilding of $35.00 per month, but less the $3,450.00 deducted by the tenant for roof repairs) from April 1, 1945 through April, 1946, or 13 months, of $12,800.00, and was thus out the difference, at that date, of $10,-220.29.

Meanwhile—and all without any notice to, or actual knowledge by, Mesirow, or any beneficiary of his trust—Duggan, as Trustee of National, filed a petition for review in the Indiana bankruptcy proceeding, asking the Indiana Court to review and reverse the order of its Referee of May 3, 1944, approving and confirming the sale, and that Court, after hearing, on June 5, 1944, affirmed the Referee, and, thereupon, Duggan, without supersedeas, appealed to the Seventh Circuit, which affirmed. In re National Aircraft Corporation, 7 Cir., 149 F.2d 548. Duggan then petitioned the Supreme Court for, and was granted, *certiorari*. National Aircraft Corp. v. Sansberry, 326 U.S. 709, 66 S.Ct. 141, 90 L. Ed. 418. The Supreme Court, on March 4, 1946, reversed, holding that Section 513, Title 11, U.S.C.A., does not "distinguish between petitions which have been *filed correctly* from those which have been *filed erroneously* with the reorganization court" and that the section "thus applies to National, whose petition for reorganization *had been filed* and against which a bankruptcy proceeding was pending", and that "Regardless of whether National's petition for reorganization in the Missouri proceeding *was properly filed* on April 19, the Indiana Court, on being notified that the petition had been filed and approved and that an injunction had issued, should have stayed immediately the sale of National's assets" (emphasis supplied), Duggan v. Sansberry, 327 U.S. 499, 504, 505, 66 S.Ct. 657, 659, 90 L.Ed. 809.

The effect of that holding was that the Indiana sale of this real estate was void and passed no title to the purchaser.

Thereafter, on March 30, 1946, an attorney for Sansberry advised Mesirow, at the latter's office in Chicago, of the above recited review, appeals and decisions—which was the first knowledge of Mesirow, or any of the beneficiaries of his trust, of any of those proceedings—and, thereafter, about May 1, 1946, Duggan, as Trustee, advised the tenant of this real estate that he owned the property, and directed the tenant to pay the May, 1946, and subsequent rents to him, and he then took over, and has since held, the real estate in question.

After unsuccessful attempts to adjust the controversy between Mesirow and Duggan—which entailed long delays, but which they stipulated should not prejudice the claims of either—Mesirow, on April 7, 1955, filed, in the National reorganization proceeding in the Missouri Court in St. Louis, a detailed petition, setting forth, chronologically, a full statement of the history of the controversy, including an allegation:

"That in July, 1946, pursuant to an order of this Court, said James C. Sansberry as Trustee in Bankruptcy of National Aircraft Corporation in the Indiana proceedings delivered to said Jerome F. Duggan, reorganization Trustee herein, the sum of, to-wit, $52,418.36, representing the proceeds from the sale of the personal property and of the real estate hereinabove described"

and prayed an order directing Duggan, as Trustee, to convey whatever interest he might have in this real estate, and to pay over all monies received by him that came from Mesirow or otherwise in respect of said real estate, to Mesirow, and for such other relief as equity may require.

Duggan, as trustee, filed an answer, asserting, in essence, that Mesirow had attempted to buy the real estate at an enjoined and void sale, and had consummated the transaction with constructive notice of the injunction and decree of the Missouri Court of April 19, 1944, and was a mere interloper, trespasser and contemnor, and had paid the purchase price not to Duggan, as Trustee, but to Sansberry, as Trustee, but the answer:

"admits that in July, 1946, the said James C. Sansberry, theretofore Trustee in Bankruptcy of the National Aircraft Corporation in the Indiana proceeding, delivered to this Trustee, as reorganization Trustee, the sum of $52,418.36, purporting to be the unexpended balance of all the monies collected by him as Trustee in Bankruptcy * * * And defendant Trustee states *that he is without knowledge or information sufficient to form a belief as to whether all or any part of the alleged balance consisted of money voluntarily paid over to the said Sansberry by the petitioner in consummation of said contemplated or unauthorized sale*, and, in any event, denies that the payment by petitioner to said Sansberry authorized any legal or equitable claim or lien by petitioner against the subsidiary debtor, or assets subsequently coming to the possession of this defendant, or its reorganization Trustee * * *." (Emphasis supplied.)

and the answer concluded with the assertion that Mesirow was not entitled to any relief whatever; and, moreover, Duggan filed a counterclaim against Mesirow (and others, but which he, during the trial, dismissed as to the others) in the amount of $28,000, as the reasonable use or rental value of the real estate during the period it was possessed by Mesirow and his tenant, from June 15, 1944 to May 1, 1946.

Upon the trial, counsel for appellant, in an effort to make formal proof of the above-quoted averment of his petition, said:

"I would also like to offer in evidence at this time the report of Mr. Sansberry, which is contained in the files of the Clerk of this Court,

which Mr. Sansberry prepared and filed at the time when he delivered to Mr. Duggan, pursuant to the order of this Court, certain monies that were then in his possession, amounting to a sum I think in excess of $50,000, showing also that the $18,750 which my people paid for the property was included in the money he was then turning over to Mr. Duggan; * * * "

Counsel for appellee objected to receipt of the document, saying "It is all immaterial in the first place, and he has not shown any reason why he should be allowed to raise these points or interfere in any of these cases, he is an interloper." The Court sustained the objection. Thereupon, counsel for appellant said:

"May I then make an offer to establish through the documents which I have asked permission to introduce in evidence, the following facts: that when Mr. Sansberry turned over the monies in his possession to Mr. Duggan, pursuant to the order of this Court, he included in those monies the sum of $18,750 which the petitioner in behalf of his trust, had paid to Mr. Sansberry as the purchase money for the real estate involved in these proceedings, * * * "

Counsel for appellee objected to the offer of proof "on the same grounds", and the Court sustained the objection.

Counsel for appellant complain that the Court committed prejudicial error in rejecting the proffered evidence. But we think that ruling of the Court did not constitute prejudicial error, under the state of the pleadings and the applic-

able law, because appellee's answer had not, in legal effect, denied that matter, nor put it in issue, and it stood admitted. It will be remembered that the answer admitted that Sansberry delivered to Duggan $52,418.36, in July, 1946, "purporting to be the unexpended balance of all the monies collected by him as Trustee in Bankruptcy", and then averred that Duggan was "without knowledge or information sufficient to form a belief as to whether all or any part of the alleged balance consisted of money voluntarily paid over to the said Sansberry by the petitioner in consummation of said contemplated or unauthorized sale." That was a matter of record in appellee's control and peculiarly within his knowledge, and, under the law and these circumstances, his answer, saying that he "was without knowledge or information sufficient to form a belief" as to that matter, did not constitute a denial of the averments of the petition on that score nor put them in issue, and, hence, in the law's regard, they stood admitted, 41 Am.Jur. Sec. 152, p. 399; 49 C.J. 265–266; 71 C.J.S., Pleading, § 149; State ex rel. Townsend v. Mueller, 330 Mo. 641, 51 S.W.2d 8; Goldwater v. Oltman, 210 Cal. 408, 292 P. 624, 71 A.L.R. 871; Sloane v. Southern Cal. Ry. Co., 111 Cal. 668, 44 P. 320, 32 L.R.A. 193; McConoughey v. Jackson, 101 Cal. 265, 35 P. 863; Kernin v. City of Coquille, 143 Or. 127, 21 P. 2d 1078; Ice Plant Equipment Co. v. Martocello, D.C.E.D.Pa., 43 F.Supp. 281; Reed v. Turner, D.C.E.D.Pa., 2 F.R.D. 12; Reed v. Hickey, D.C.E.D.Pa., 2 F.R. D. 92; Nieman v. Bethlehem National Bank, D.C.E.D.Pa., 32 F.Supp. 436, Nieman v. Long, D.C.E.D.Pa., 31 F.Supp. 30.[1] Moreover, though the Court excluded the proffered evidence as stated, he (apparently taking judicial notice of

[1.] The cited cases fully support the text of 41 Am.Jur., Sec. 152, p. 399, reading "The rule permitting denials on information and belief or for want of information and belief is subject to an exception in case of facts either actually or presumably within the knowledge of the defendant, or facts which are at hand and accessible and which it is the duty of the defendant to ascertain. Denials concerning such matters are very properly required to be in positive form, and, if merely on information and belief, they will be held frivolous, or treated as being an evasion. They may be stricken out, or, if not stricken, ignored. In such case, the pleading does not raise an issue of fact."

the court files in the National reorganization proceeding, as he was entitled to do) actually found (R. 66) that "Mr. Duggan, after the mandate of the Supreme Court came down, recovered of Mr. Sansberry some fifty thousand dollars, being the unexpended residue of the subsidiary debtor's estate * * *", and appellee makes no contention here that he did not get that money, but, rather, his contention is, that despite that fact, appellant has no interest in the real estate or the proceeds of its sale and is not entitled to the real estate or to any lien on it. In these circumstances it must be taken as established that Sansberry, in July, 1946, paid over to Duggan, Trustee, the money which Mesirow (and the beneficiaries of his trust) had paid to Sansberry for this real estate at, and pursuant to, the void sale.

All the above-recited facts (and some collateral ones which, in the view we take of this case, are immaterial to its correct disposition) were established, without substantial dispute, but at the conclusion of the trial the Court announced his finding and conclusion that Mesirow was not entitled to any relief, and, moreover, that Duggan, as Trustee, was entitled to judgment against Mesirow upon the counterclaim in the amount of $28,000, and, subsequently, the Court, after adopting formal findings prepared by counsel for Duggan, entered judgment accordingly, from which Mesirow has appealed.

 Appellant advances several theories of attack upon the judgment. The first one is that certain conclusions reached by this Court in Magidson v. Duggan, 212 F.2d 748, establish that the decree and injunction of the Missouri Court of April 19, 1944 was improperly entered and should be treated as a nullity, and that, in consequence, the Indiana sale of April 20, 1944 should be held valid, and that Duggan, as Trustee, should be ordered to quit-claim this real estate to Mesirow. But the case of Magidson v. Duggan, supra, did not involve a direct attack upon, nor did it vacate, the Missouri Court's decree and injunction of April 19, 1944, but was directed, rather, only to the findings and conclusions in the Magidson case itself, and in view of that fact and of the holding by the Supreme Court in Duggan v. Sansberry, supra, above summarized, we feel compelled to hold, and do hold, that the Indiana sale of this real estate, made April 20, 1944, did not pass legal title to Mesirow, and that, under the circumstances, he is not entitled to a decree ordering Duggan, as Trustee, to quitclaim this real estate to him.

 Of the several other theories of attack upon the judgment there is one that is so entirely clear and completely conclusive, and that so perfectly lends itself to the adjustment of the equities between the parties, that we put aside all others. That attack is based upon the universal and age-old equitable principle that one who sells real estate, at a void judicial or quasi-judicial sale, to a purchaser who pays the purchase price in good faith and without actual knowledge of facts or circumstances rendering the sale void, may not, in conscience, be permitted to keep both the real estate and the purchase money; and that, if, as here, specific performance cannot be had, the purchaser is entitled to an equitable lien upon the real estate in an amount equal to the purchase price paid for it plus his costs of permanent improvements made thereon and his expenses in maintaining and protecting the same, less rents and profits received by him therefrom, with simple interest, at the applicable legal rate, computed upon unreimbursed balances. Typical of the many cases so holding are Shanklin v. Ward, 291 Mo. 1, 236 S.W. 64; Patillo v. Martin, 107 Mo.App. 653, 83 S.W. 1010; Henderson v. Langley, 76 Mo. 226; Townsend v. Tipton, 289 Ky. 776, 160 S.W.2d 161, 142 A.L.R. 306; Faughnan v. Bashlor, 1927, 163 Ga. 525, 136 S.E. 545; Federal Reserve Bank of Kansas City v. Omaha National Bank, 8 Cir., 45 F.2d 511; Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378; Scott on Trusts, Vol. 3, Sec. 462.2, p. 2317; Pomeroy on Equity, Sec. 1053.

Though, in this instance, the purchase price paid by appellant for this real estate was not orginally paid to Duggan, Trustee, but to Sansberry, Trustee, that money was paid over by Sansberry to Duggan in July, 1946, with the result that since that time, Duggan, Trustee, has had both the real estate and the money paid by appellant for its purchase. In those circumstances, it would be shockingly inequitable and unjust to permit him to retain both.

Here, the evidence is clear that neither appellant nor any beneficiary of his trust had any actual knowledge of any fact or circumstance indicating invalidity of the sale at the time he paid the purchase price for the real estate or at the time he disbursed the monies above-stated, for the improvement, protection, leasing and insuring of that property, or until March 30, 1946, when he was advised by an attorney for Sansberry of the above-mentioned petition for review, appeals and decisions.

But appellee argues that appellant cannot be found innocent because he was charged with constructive notice of the Missouri Court's decree and injunction of April 19, 1944, through the reference thereto in Sansberry's report of sale of April 21, 1944, and by the recording of a copy of that decree and injunction in the office of the recorder of Madison County, Indiana, on May 5, 1944, before the complete consummation of the sale (but as stated, neither of those matters were in any way referred to in the abstracts of title covering this property that were furnished to appellant). The law is clear that, in circumstances like the present, where the actual good faith of the purchaser is the issue, "the doctrine of constructive notice is without application [and] his good faith can be challenged only on the ground that he had actual knowledge of the defects in the title, or knowledge of such facts and circumstances as would have put a man of ordinary circumspection upon inquiry", Shanklin v. Ward, supra [291 Mo. 1, 236 S.W. 68].

Appellant was without actual notice of any fact indicating invalidity of the sale, or of any circumstance sufficient to put him upon inquiry in that respect until March 30, 1946, by which time he had paid out the monies in question, and, hence, there is no basis for impugning his actual innocence and good faith.

Our conclusion is that appellant is entitled to, and that the District Court erred in failing to decree to him, an equitable lien on this real estate for the amount of the purchase price he (and the beneficiaries of his trust) paid for it at, and in consummation of, the void sale, and for the sums he expended for its improvement, maintenance, protection, insurance and leasing to produce income, less the income and profits he derived therefrom while in possession, with simple interest on unreimbursed monthly balances, computed at the applicable legal rate of 6%, Section 19–2001, Burns' Indiana Statutes Annotated, 1933, to the time dispossessed on May 1, 1946, and to simple interest, at the same rate, on the principal balance then remaining unpaid to the date of foreclosure of the lien. And we compute and determine the amount of the lien, to which appellant is entitled, to January 1, 1957, as follows:

Unreimbursed principal balance due appellant at May 1, 1946 ................. $10,220.29

Simple interest at 6% per annum on unreimbursed monthly balances to May 1, 1946 (not including interest on the lease commission of $1,200 or the insurance premiums of $1,600, because the dates of those disbursements by appellant are not definitely shown in the record) .............. 1,871.53

Simple interest at 6% per annum on the principal balance of $10,220.29 unreimbursed at May 1, 1946, from May 1, 1946 to January 1, 1957 ............. 6,721.00

Amount of equitable lien to January 1, 1957 .......... $18,812.82

Nor do we find any basis in the evidence and the law to support the judgment of $28,000 entered by the Court against appellant and in favor of appellee upon the latter's counterclaim.

The judgment appealed from is reversed, and the cause is remanded to the District Court with directions to grant and decree to appellant an equitable lien upon said real estate in the amount of $18,812.82, to bear interest at the rate of 6% per annum from and including January 1, 1957 to the date of payment or foreclosure of such lien.

Reversed and remanded with directions.