OWEN J. HANICK, Appellant, v. MARION COUNTY.

### Division Two, December 22, 1925.

1. **STATE HIGHWAY: Construction by County.**  The statutes vest in the State Highway Board exclusive jurisdiction in the matter of selecting and constructing a system of state highways, and a county court has no power or jurisdiction in the selection or construction of highways designated by the State Board for construction, and no power to make or enter into a contract for such a road, even when authorized to do so by the State Board.

2. ————: **County Contract: Without Bids.**  A county court has no power to enter into a contract without competitive bidding for the construction of a public road whose estimated cost exceeds five hundred dollars.  And even if the State Highway Board had power to authorize a county court to enter into a contract for the construction of a state highway, the contract, under the statute (Sec. 10905, R. S. 1919), must "be let on competitive bids in the manner provided by law," and if not so let is void.

3. ————: **Division of Costs.**  A contract made by the county court for the construction of a state highway, even if it were otherwise valid, would be void if it ignores the provisions of the statute (Sec. 10901, R. S. 1919) which limits the liability of the county to the payment of one-half the cost. And a provision in any such contract that the county will finance the project and pay the contractor sixty per cent of the profits is likewise unauthorized.

Highways, 29 C. J., Section 347, p. 605, n. 72; p. 606, n. 76, 80.

Appeal from Pike Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

AFFIRMED.

*L. G. Blair* and *Kinealy & Kinealy* for appellant.

(1)  The contract made by respondent with the State Highway Department is legal and binding.  Secs.

10661, 10703, 10733, 10782, R. S. 1919. (2) ·The contract between appellant and respondent is legal and binding. Sec. 10733, R. S. 1919; Kipp v. Oyster, 133 Mo. App. 711; Ege v. Brick & Const. Co., 118 Mo. App. 630. (3) All parties are bound by the certified copy of contract with estimate attached as furnished by the clerk of the county court. Dennison v. St. Louis Co., 33 Mo. 168; Sanderson v. Pike Co., 195 Mo. 598; Henry Co. v. Salmon, 201 Mo. 136.

*Roy Hamlin, Ben Ely* and *Hostetter & Haley* for respondent.

The contracts were illegal and invalid and were *ultra vires* as averred by respondent in its answer filed in the trial court.

HIGBEE, C.—This is an action to recover $41,-086.98, alleged to be due and unpaid on a contract for the construction of ten and one-half miles of hard-surfaced road in Marion County. From a verdict and judgment for the defendant, plaintiff appeals. On the first hearing an opinion was filed, reversing the judgment and remanding the cause for a new trial. A motion for a rehearing was sustained and the cause has been reargued.

The petition alleges that on and prior to September 7, 1920, the State Highway Commission of Missouri and the defendant contemplated the construction of certain hard-surfaced roads in Marion County as part of the state highway system, including ten and one-half miles of road running west from the city of Hannibal, as shown and described in the plans and specifications on file in the office of the State Highway Commission, and known as Project Number 62; that said State Highway Commission duly authorized Marion County to construct such hard-surfaced road, including said ten and one-half miles of road; that on September 7, 1920, the defendant, acting by and through its county court, as first party, and

plaintiff as second party, entered into a written contract by which, in consideration of payments to be made, plaintiff agreed to do all the required work on said ten and one-half miles of road, as shown by the plans and specifications and in conformity therewith, and to complete the same within 350 days, exclusive of Sundays and holidays, unless additional time should be granted. Omitting certain details, it is provided by the contract that at the end of each month the summation of all bills paid out by the court on account of labor, repair, freight, rental, maintenance and material, shall be deducted from the engineer's estimate, if said estimate is in excess of costs paid by the court, and the difference shall be divided between the court and the contractor, forty per cent to the court and sixty per cent to the contractor; provided twenty-five per cent of the contractor's share shall be retained until the completion of the work. . . . In the event that summation of bills exceeds engineer's estimate, excess shall be assumed by the court, provided, however, contractor shall receive no compensation for time and equipment furnished in construction of the project.

That plaintiff entered upon the execution of said contract and completed the construction of said road and same was accepted by the State Highway Commission and the defendant on or about December 21, 1921; that the total amount of work done by plaintiff (here the petition sets out the items of work) and the total value thereof is $150,922.49; that defendant paid out and expended for labor, materials, etc., on said work $75,777.-53; that the difference between the sums so paid out by defendant and the value of the work done by plaintiff is $75,144.96; that plaintiff is entitled to recover from defendant sixty per cent of such difference, or $45,086.98; that defendant is entitled to a credit of $4,000 paid to plaintiff by the defendant, leaving a balance due plaintiff of $41,088.98, for which he prays judgment with interest from February 20, 1922, when demand was made.

Defendant's amended answer is a general denial, an averment that the defendant was without power or authority to execute the contract pleaded, and that plaintiff failed to construct the road in accordance with the plans and specifications. It also avers fraud and collusion between plaintiff and his brother M. J. Hanick, divisional engineer in charge of the construction of the state highway system in northeast Missouri, and the federal inspector. The reply is a general denial.

Plaintiff read in evidence a resolution adopted by the State Highway Board, reciting that the County Court of Marion County made application for State and Federal aid in the improvement of 10.26 miles of state road known as Missouri Federal Aid Project 62 (Sections A & B) etc., and that all requirements for said county court to receive Federal and State aid on said project have been complied with under the law, and that the applications, plans, specifications and estimates of costs on said project have been duly approved by the Missouri state highway department and the Federal bureau of public roads, and that the state highway department advertised for proposals to construct said project and no bid or proposal had been received. Therefore, resolved, that the state highway department, by authority invested in it by Section 8b, page 656, of the Session Acts of 1919 (now Sec. 10898, R. S. 1919), does hereby instruct the State Highway Engineer to authorize the said county court to proceed to construct the said project (Sections A & B) in accordance with the plans and specifications above mentioned. The resolution binds the county court to furnish all necessary items of construction at its own cost and to construct said project in accordance with said plans and specifications under the supervision of the State Highway Engineer; "that the State Highway Department agrees to pay said county court the share of the State in this work—which will be $1200 per mile for 10.5 miles, plus one-half of the cost of the project in excess of the said $1200 per mile; . . . provided the State shall not pay to the county court more

than the sum of $67,744.57 on said project, regardless of the actual and true cost for completing the same." The resolution concludes: "Witness by our signatures the acceptance of and the agreement to the terms and conditions hereinbefore set forth." The resolution is signed by the chairman and secretary of the State Highway Board and by the judges of the County Court of Marion County, and attested by the clerk of said court and the seal thereof under date of September 7, 1920. Plaintiff also read in evidence the contract between the County Court of Marion County and O. J. Hanick, dated September 7, 1920, which is substantially as pleaded in the petition.

The evidence for the plaintiff tended to show the construction of the road according to the plans and specifications, and acceptance by the State Highway Engineer and the county court. The evidence for the defendant tended to prove that the road was not so constructed and that the alleged acceptance was collusive.

Appellant assigns errors in the admission and rejection of evidence and in the giving and refusal of instructions, but in the view we take of the case it will not be necessary to notice either of these assignments. Appellant's theory of this case is best shown by the brief and argument of his learned counsel, from which we quote:

"Marion County having initiated proceedings for the construction of ten and one-half miles of hard-surface road here involved, and known as Project No. 62, and the State Highway Board, the predecessor of the present State Highway Commission, having unsuccessfully advertised for bids, the board at the solicitation of the county entered into a contract with the county court on behalf of the county whereby the latter undertook to construct the road within the estimate of cost prepared by the State Highway Engineer. This contract obligated the State Highway Department to pay to Marion County the sum of $1,200 per mile plus one-half the cost of the project in excess of $1,200 per mile, and providing that of the estimate of cost which was then $122,-

889.14 the State should not pay to the county court more than $67,744.57. Thereupon Marion County contracted with plaintiff for the construction of the road in accordance with the plans and specifications and which contract provided that plaintiff should give his time and attention to the work and furnish such necessary equipment as the county did not have, but such equipment as the county had was to be furnished without cost to the contractor, and the county moreover was to provide the gravel, pay directly all labor, maintenance, repair and material bills in the execution of the work, and at the end of each month there should be a summation of all bills paid out by the county court and the amount thereof deducted from the engineer's estimate of the work done, a copy of the engineer's estimate of costs is recited as being attached to the contract, and that the profits should be divided between plaintiff and defendant in the proportion of sixty per cent to plaintiff and forty per cent to the defendant, with the right on the part of defendant to withhold twenty-five per cent of plaintiff's share until the final completion of the work.''

In their additional brief, filed at the rehearing of this cause, counsel say: ''The duty to maintain, repair and make the public highways of a county is vested in the county court,'' citing Sections 10661, 10703, 10733 and 10783, Revised Statutes 1919. Hence it is argued that, ''the contract made by respondent is legal and binding.'' There is no doubt that our county courts are invested with jurisdiction in the construction and maintenance of county roads and highways within the terms, conditions and limitations prescribed by the statutes. But, by the Act of March 13, 1917 (Laws 1917, p. 485, amended Laws 1919, p. 650; now Art. XI, ch. 98, R. S. 1919) the State assented to the act of Congress providing Federal aid in the construction of rural post roads and created the State Highway Department and invested that department with exclusive jurisdiction in the selection and construction of a system of state highways to be distributed among the several counties of the State, to be known

as "state roads," and provided in detail for their construction under the supervision of the State Highway Engineer. [Sec. 10896 et .seq., R. S. 1919.] Section 10898 provides that after the plans, specifications and estimates have been made, filed and approved by the said board, the State Highway Engineer.shall advertise for bids for the construction of such roads, culverts and bridges, for a part or all of the road in any county, etc.; provided, if no satisfactory bid shall be received within the estimate, the board shall be authorized to complete said road by private contract, force account or otherwise, if the same can be done within the estimate.

The premises considered, it is clear that this project number 62 was a part of the system of state highways authorized to be constructed by and under the exclusive jurisdiction of the state highway department, and that, failing to receive a bid for its construction within the estimate, the department was authorized to construct the road by private contract with any person, corporation or association competent to enter into such contract. The resolution of the State Highway Board read in evidence by plaintiff recites the unavailing effort to secure a bid for the construction of project number 62 within the esti-mate, and that, by authority of the statute (now Section 10898), it instructed the State Highway Engineer to authorize the said county court to construct said project in accordance with the plans and specifications, binding said county court "to furnish all necessary items of construction at their own cost and to construct the said project in accordance with said plans and specifications, under the supervision of the State Highway Engineer."

In appellant's original brief the authority of the county court to enter into the contract with the plaintiff by the direction of the state highway department is as-. sumed; no statute or court decision is cited in support of that assumption. In appellant's additional brief learned counsel abandon their original theory and find the county court's authority to make the contract sued upon in Section 10733, Revised Statutes 1919. This sec-

tion provides that ''whenever any public money . . . is to be expended in the construction, reconstruction or other improvement of any road or bridge or culvert, the county court . . . shall have full power and authority to construct, reconstruct or otherwise improve any road . . . and to that end may contract for such work, or may purchase machinery, employ operators and purchase needed materials and employ necessary help and do such work by day labor,'' etc. Section 10734 provides that ''whenever it shall be ordered by the county court . . . that any road, bridge or culvert in the county shall be constructed, reconstructed or improved or repaired by contract and the engineer's estimated cost thereof exceeds the sum of $500, the county . . . authorities shall order the county highway engineer . . . to prepare and file with the county clerk, all necessary maps, plans, specifications and profiles and an estimate of the cost of the work.'' It further provides that the engineer shall advertise the letting of the contract and that the contract shall be let to the lowest responsible bidder and that any bid in excess of the engineer's estimate shall be rejected and that when it shall be decided by order of record to accept any bid, the county . . . authorities shall order a contract to be entered into by and between the bidder and the county.

It is too plain to admit of argument that the act creating the state highway department vested in that department exclusive jurisdiction in the matter of selecting and constructing a system of state highways and that since its enactment county courts have no power or jurisdiction in the selection or construction of state highways designated for construction by the department. It appearing from the petition and evidence that project number 62 is a part of the system of state highways, it is apparent that the county court of Marion County was without power to make or enter into the contract for the construction of the road in question. But, waiving this consideration and conceding for the sake of argument that the county court had power to enter into a contract

as provided by Section 10733, since the estimated cost of the construction of the road exceeded $500, the contract having been let without competitive bidding, the court was without power or authority in the premises. This proposition has been so thoroughly considered in Hillside Securities Co. v. Minter, 300 Mo. 380, 254 S. W. 188, that nothing further need be said. The judgment is affirmed. *Railey, C.,* not sitting.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is adopted as the opinion of the court. All of the judges concur; *Blair, J.,* in the result, on grounds that contract in suit was illegal.

## ON MOTION FOR REHEARING.

HIGBEE, C.—Appellant's learned counsel in their reply brief in support of the motion for rehearing, contend, correctly as we think, that Section 10734, Revised Statutes 1919, has no application to this case and specially rely on Section 10, Laws 1919, p. 657, now Section 10901, Revised Statutes 1919. We quote from their brief:

"That is made extremely clear by referring to provisions of Section 10, providing for building by a county of roads under supervision of State Highway Board and for receiving by state or government aid therefor. [Sec. 10, Laws 1919, pp. 657, 658.] 'In addition to roads provided for in preceding sections of this act any county . . . desiring construction of any state road . . . may present the matter in writing to the State Highway Board . . . and thereupon the board may direct the highway engineer to view, survey and furnish plans, specifications and an estimate of cost thereof . . . upon receipt of such survey, plans, specifications and estimate of cost the engineer with the State Highway Board shall examine same and if deemed practicable . . . such road shall be included in the project statement of roads to be constructed with Federal aid . . . and shall authorize said county . . . to proceed to

construct said road in accordance with said survey, plans and specifications and within the estimate so furnished and all in accordance with the requirements of the State Highway Board and the said Federal bureau of public roads, provided: 'No such road shall be constructed unless the construction thereof meets the approval of said Federal bureau of public roads and then when so constructed one-half of the cost thereof shall be paid by the county . . . and the other half by the Federal aid fund.'

"This is a special statute to enable counties by contract under supervision of State Highway Board to build a road which will be a state highway and for which the Federal Government through the State will pay one-half.

"No provisions in Section 10 for county court having any control of cost or location or plans or specifications of said road.

"Special powers are by Section 10 conferred on county to enable it to procure Federal aid to extent of one-half of cost of road and special method is prescribed for exercise of this power and in such circumstances the rule is the particular method pointed out for exercise of the power for bids renders nugatory the doing of the thing in any other way under the rule of *expressio unius, exclusio alterius.* [Citing cases.]

"There is no provision for advertising by the county in Section 10, Act of 1919.

"Section 10734 contemplates work wholly under county control and wholly paid for by county on county roads as contradistinguished from state highways.

"Section 10, Act of 1919, contemplates Federal aid to build a county road only when Federal bureau approves, because Section 10 proviso expressly says no such road shall be built without Federal bureau approved it.

"For these reasons, Section 10734 is wholly inapplicable to the contract in suit herein.

"The State Highway Board attempted to build the road, advertised twice, could get no bids. If it were not for the provisions of Section 10 exactly meeting the situation then confronting Marion County and the State Highway Board, Marion County could never have received one-half cost of road from State.

"Marion County applied to State Highway Board to build the road. Marion County did not attempt to build the road. Marion County did not order the road built.

"The State Highway Board only had power to and did order the road built by directing Marion County to make a contract to build it and no provisions of Section 10 specified for advertisement for bids. nor any particular method of making the contract. Marion County could could only get Federal aid by the State Highway Board ordering the road. If Marion County alone ordered it no Federal aid could be procured and Marion County would have had to pay for it and then Section 10734 might have applied."

It is true, as stated by counsel, that "there is no provision for advertising by the county in Section 10, Act of 1919." But Section 10905, Revised Statutes 1919, being Section 14 of the Act of 1919, reads, in part: "All road and bridge construction done under the provisions of this article shall be under the supervision and control of the State Highway Engineer, and all work done by the county, civil subdivision or persons interested, under the provisions of Section 10901, shall be let by competitive bids in the manner provided by law." Hence, as the contract for the construction of this project was not let on competitive bids, in violation of the requirements of the statute, it imposed no obligation on the county. No citation of authorities is needed in support of this proposition.

Furthermore, the proviso to Section 10901, cited in appellant's brief, supra, limits the liability of the county to the payment of one-half of the cost of the construction of the road. This mandatory feature of the statute was

ignored in the contract sued upon. It provided in substance that the county should finance the project and pay the contractor sixty per cent of the profits. The statute relied on makes no provision for the division of profits. The contract was clearly unauthorized by the statute, illegal and unenforceable. Other contentions need not be considered. The motion for rehearing is overruled. *Railey, C.*, not sitting.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is adopted as the opinion of the court. All of the judges concur.