THE STATE, EX REL. THE NEW JERSEY SUBURBAN WATER COMPANY, RELATOR, v. JOSEPH P. RIORDAN AND FRANCIS J. McDONALD, THE MAYOR AND TOWN CLERK, RESPECTIVELY, OF THE TOWN OF HARRISON, RESPONDENTS.

Submitted January 2, 1926—Decided March 1, 1926.

**Water Supply—Act of 1923 Confers Upon Municipalities the Right to Contract for Water Supply Independent of the Restrictions and Other Provisions of the Home Rule Act—The Contract Between Relator and Town of Harrison Sustained and Writ Directing Its Execution by the Proper Municipal Officers Awarded.**

On alternative writ of *mandamus,* &c.

Before Justices TRENCHARD, KATZENBACH and LLOYD.

For the relator, *Dembe & Dembe* (*Thomas J. Brogan,* of counsel).

For the respondents, *Joseph P. Riordan* and *Mark A. Sullivan.*

PER CURIAM.

In this case there is an alternative writ of *mandamus,* a return thereto made by the respondent Riordan, a plea to the return, and depositions. Thereby the following matters of fact are established without dispute:

On June 26th, 1924, the relator, the New Jersey Suburban Water Company, a corporation of the State of New Jersey, offered in writing to the town of Harrison, a municipal corporation of the State of New Jersey, an extension of a contract now existing between both these parties for the supplying of water by the company to Harrison, such extension to be for a period of fifteen years from the date of the expiration of the present contract above referred to, which will expire in 1928, upon the same terms and conditions as are

contained and set forth in the present agreement, excepting that the rate to be paid for water shall be $104.25 per million gallons instead of $82.50 per million gallons, and excepting, also, that the new rate of $104.25 per million gallons shall be subject to such modifications as may be made therein by the public utility commission of the State of New Jersey upon the application of either the town or the company; that on July 15th, 1924, the town, by its mayor and common council, adopted a resolution accepting such offer of extension in all its particulars without change, and further by such resolution directed its corporation counsel to prepare an agreement between the town and the company in accordance with such offer and acceptance, and further resolved that the proper officers of the town be authorized and directed to execute such agreement when submitted by the said corporation counsel; that such corporation counsel did prepare and submit an agreement between the parties embodying the terms above set forth in the offer and acceptance, and that the signatory officers for the town, to wit, Joseph P. Riordan, its mayor, and Francis J. McDonald, its town clerk, have refused to sign and execute such agreement in accordance with the resolution of the town.

The respondent Joseph P. Riordan, in his return, says that he should not be compelled to sign the contract referred to, because (a) the contract has no approval of the governing body of the town endorsed thereon, nor is any security given for the performance of the same, as required by "An act concerning municipalities," article 32, section 7 (*Pamph. L.* 1917, *p.* 434); (b) that the contract is for supplies, and as such should be advertised and awarded to the lowest bidder, as required by the act concerning municipalities, article 11, section 1 (*Pamph. L.* 1917, *p.* 347); (c) that the acceptance by the town of the offer by relator is an unreasonable and improvident exercise of the power of the council of the town and a palpable abuse of its discretion.

The question thus raised will now be considered.

The contract in question was entered into under the authority of chapter 194 of *Pamph. L.* 1923, entitled "An act

to authorize municipalities and water companies to contract for a supply or an additional supply of water for domestic and public use in any municipality, or in all municipalities supplied, or to be supplied, with water by a water company, or water companies with which such contract is made."

Section 1 thereof provides that "any municipality, or two or more municipalities of this state, may make and enter into a contract with any water company, or more than one water company, for a supply of water, or an additional supply of water, for domestic and public use therein, for a period not exceeding thirty years, on such terms and conditions, at such rates, and with such exclusive provision for revision of rates from time to time as may be agreed on, and any such company or companies is and are hereby authorized to make and enter into such contract."

Section 4 provides that "all acts and parts of acts inconsistent with this act be and the same are hereby repealed."

This statute is an independent, separate act which enables a municipality and a water company to enter into the precise kind of a contract now in question, and does not require, as did the act concerning municipalities of 1917, that the approval of the governing body of the town be endorsed upon the contract, nor does it require any security as a condition precedent to the execution of the contract.

Also, we think that the town, acting under the act of 1923, page 502, was not required by section 1 of article 2, chapter 152 of laws 1917, page 347, to call for bids for the water supply in question.

True, section —— of article 2 of the latter provides that "no municipality shall enter into any contract for the doing of any work or for the furnishing of any materials, supplies or labor, the hiring of teams or vehicles, where the sum to be expended exceeds the sum of $500, unless the governing body shall first publicly advertise for bids therefor, and shall award the said contract for the doing of said work or the furnishing of such materials, supplies or labor to the lowest responsible bidder."

But that section is not applicable to a contract for the extension of an existing contract for a water supply made pursuant to the act of 1923 (page 502), which is a broad, comprehensive and independent statute, and authorizes any municipality, or two or more municipalities, to make a contract with any water company or more than one water company for a supply of water for domestic and public use for a period not exceeding thirty years, *on such terms and conditions, at such rates, and with such exclusive provision for revision of rates from time to time as may be agreed upon.*

The case of *Van Reipen* v. *Jersey City,* 58 *N. J. L.* 262, is not in point. In that case the court pointed out that the act of 1888 "authorizes a contract for water supply *without specifying how that contract shall be entered into;*" that there was no inconsistency between the act of 1888 and the charter provision of Jersey City (*Pamph. L.* 1871, *p.* 1162) for call for bids for work and materials, and that "the fourteenth section of the act of 1891 [*Pamph. L.* 1891, *p.* 249, and applicable to Jersey City] clearly indicates the legislative purpose to preserve the charter provision of 1871 and to apply it to all contracts." As we have pointed out, the act of 1923 authorizes the municipality to make such contract "on such terms and conditions, at such rates, and with such exclusive provision for revision of rates from time to time as may be agreed on," and further provides that all parts of acts inconsistent with its provisions are repealed. One reason for this legislation no doubt was that, since the adoption of the Public Utilities act of 1911, a contract between a municipality and a water company, fixing the rate to be charged for service, imposes no restrictions on the sovereign power of the state to fix just and reasonable rates as subsequent conditions may make desirable, and when the state, through its board of public utility commissioners, exercises its sovereign power over rates, the contract rights of the parties must yield. *Hackensack Water Co.* v. *Public Utility Board,* 96 *N. J. L.* 184.

There is no showing here that the contract in question is an unreasonable or improvident exercise of power or a pal-

pable abuse of discretion. It is not shown to be so by the fact that it was made four years in advance of the expiration of the present contract, nor by the fact that, subsequent to the making thereof, a proposition was received from another source for a supply at a lower rate. The resolution resulting in the contract received the vote of six of the eight members of council, including that of the respondent, and has not been rescinded. The governing body may well have considered, and is presumed to have considered, it unwise to take chances on obtaining a supply on short notice or at random; and the respondents concede in their brief that the rate "means very little, for the reason that the contract provides that either party may apply to the public utility commission for a modification of the rate." Moreover, such questions should have been raised, if raised at all, by *certiorari*.

The relator is entitled to judgment, and a peremptory writ of *mandamus* will be awarded.