## LAYNE–WESTERN CO. v. BUCHANAN COUNTY, MO.

No. 10576.

Circuit Court of Appeals, Eighth Circuit.

Aug. 3, 1936.

Samuel A. Dew, of Kansas City, Mo. (Jackson K. Hurd, of Kansas City, Mo., on the brief), for appellant.

Charles W. Meyer, of St. Joseph, Mo. (Maurice Hoffman, of St. Joseph, Mo., on the brief), for appellee.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment denying plaintiff recovery on a contract entered into with defendant through its county planning and recreation commission on the ground that the contract was entered into in violation of the County Budget Law and the County Auditor Act, in that it did not bear the certification of an accounting officer and was not let through competitive bidding as required by the first of said statutes. The appellant urges that the contract in question is not governed by the Budget Law and that, even if it were, the appellee is estopped to deny its validity.

The county planning and recreation commission of Buchanan county, Mo., was created by the county court on April 24, 1933, pursuant to the County Planning and Recreation Act, approved April 13, 1933 (Laws of Missouri, 1933, pp. 212–214). The County Budget Law (Laws of Missouri, 1933, pp. 340–351 [Mo.St.Ann. § 12126a et seq., p. 6434]), relied upon by appellee, was approved by the Governor May 12, 1933. Both laws were enacted at the same session of the Legislature.

The contentions of the parties cannot be understood without reference to the provisions of these acts of the Missouri Legislature.

The County Planning and Recreation Act provides in section 1 that the county court (the governing board of the county) shall be empowered to acquire and control property for recreational purposes; and for these purposes a county planning and recreation commission consisting of four members to be appointed by the court is created. Section 2 further elaborates on the power of the court to acquire the property, and provides that it may apportion and turn over to the commission sufficient federal government ·funds, state funds, or county relief funds to acquire and control such property and to construct and maintain improvements thereon. Section 3 defines the powers of the commission, giving it power to recommend to the court plans for the improvement of properties so acquired; to construct and maintain improvement work pertaining to the development of the recreational projects as delegated to the county court in sections 1 and 2; to adopt rules and regulations concerning matters relating to the project; to contract as the agent of the county in connection with the purposes therein authorized; to lease and grant concessions to properties under its control; to expend money received for all such purposes, provided it file certain reports with the county court; and to employ suitable persons to acquire, design, construct, and maintain improvements. Section 4 provides that the commission in its own name may make all necessary contracts and obtain loans and pledge the property acquired for any mon-

cys that may be available from the United States government or the state in carrying out the purposes of the act and shall co-operate with the federal or any state or county government in the carrying out of any plans or developments or acquisition of property. Section 6 provides that, since no state law authorizes the acquisition and development of such properties as are provided for in the act, and it being necessary for such counties to do so for the purpose of relieving distress by development of public works, an emergency is created within the meaning of the Constitution, and the act shall take effect from and after its passage and approval.

The County Budget Act provides that the annual budget for each county of Missouri shall present a complete financial plan for the ensuing budget year; shall set forth all proposed expenditures of all offices, departments, commissions, courts, and institutions; that each of these officers on or before October 1st of each year shall submit to the budget officer estimates of its expenditures for the coming year; and that all agencies of the county spending money shall observe the preceding restrictions. Section 19 of the act (Mo.St.Ann. § 12126s, p. 6434) provides:

"*Execution of Contracts.*—All contracts shall be executed in the name of the county by the head of the department or officer concerned, except contracts for the purchase of supplies, materials, equipment, or services other than personal made by the officer in charge of purchasing in any county having such officer.

"No contract or order imposing any financial obligation on the county shall be binding on the county unless it be in writing and unless there is a balance otherwise unencumbered to the credit of the appropriation to which the same is to be charged and a cash balance otherwise unencumbered in the treasury to the credit of the fund from which payment is to be made, each sufficient to meet the obligation thereby incurred and unless such contract or order bear the certification of the accounting officer so stating. * * * All contracts and purchases shall be let to the lowest and best bidder after due opportunity for competition, including advertising the proposed letting in a newspaper in the county with a circulation of at least 500 copies per issue, if there be such, except that such advertising shall not be required in case of contracts or purchases involving an expen-diture of less than $500.00, in which case notice shall be posted on the bulletin board in the court house."

There was also enacted at the same session of the Legislature that enacted the foregoing two acts the County Auditor Act (page 351, 1933 Laws of Missouri) [Mo. St.Ann. § 12218, p. 6470], providing that the county auditor (the accounting officer of the county) shall keep accounts of all appropriations and expenditures made by the county court, and that no obligation shall be incurred without his certification reciting that there is an unencumbered balance in the appropriation against which the account is to be charged.

The county planning and recreation commission for Buchanan county, having been appointed under said act, on December 11, 1933, recommended to the county court, as a recreational project, the restoration of Lake Contrary, a lake which had long since dried up. It was further recommended that the water for filling the lake and for maintaining the water level be supplied from two deep wells at the site of the lake. This recommendation was approved and adopted by the county court on December 11, 1933. The appellant was given the contract because it was the only concern found which would drill the wells, furnish the equipment, install the same, and guarantee the production of water or no pay. Other concerns found would drill the well or furnish the pump, but the commission wanted a single responsibility for the wells and pumps.

At that time the state highway department owed the county approximately $121,-700 in road refunds for roads originally built by the county and taken over by the state. The commission was informed that these refunds would be available by August 1, 1934. The president of the appellant company was advised as to these refunds, but did not agree to accept his money out of any particular fund.

On April 17, 1934, appellant contracted with the commission, subject to the approval and adoption of the county court, to install two gravel wall wells and to guarantee a minimum production of each well with provisions for a bonus for excess capacity produced. The contract was approved and adopted by the county court. During the course of construction of the wells the county through its agents duly supervised the work, and the public was invited to attend demonstrations of the

wells. During this period, it is alleged, the commission and county agents made representations to the appellant that the money to the credit of the county from the highway commission would be available to pay the appellant the contract price; and a large portion of the money was actually received by the county later in the year. On July 6, 1934, both wells were accepted as complete and satisfactory by the commission and possession was delivered to the county. The county thereupon began the operation and use of the wells and pumps, and continued to operate them from that date up to the following September, during which time there were pumped into the lake bed about 860,000,000 gallons of water, gradually raising the level of the lake 5.8 feet. It is admitted that the appellant fulfilled its contract obligations but has never been paid for doing so. This suit is upon the express contract to recover the compensation provided for therein.

It is conceded that in the making of the contract sued upon the provisions of the County Budget Act and of the County Auditor Act were disregarded by the parties thereto; that the contract was not "let to the lowest and best bidder after due opportunity for competition, including advertising the proposed letting," etc., as required in the County Budget Act; and that the contract did not bear the required "certification of the accounting officer," as required in both of said acts.

The trial court determined the issues in favor of the county. Findings of fact and a memorandum opinion were filed in which the court held (1) that the contract is not binding upon the county and (2) that the county is not estopped to deny its validity. These holdings are challenged here by appropriate assignments of error.

■ It is first contended that the County Budget and County Auditor Acts are not applicable to contracts entered into by the commission, and that the provision in the County Planning and Recreation Act (Laws Mo.1933, p. 213, § 4) that "the Commission in its own name may make * * contracts" is inconsistent with the provision in the County Budget Act that "All contracts shall be executed in the name of the county by the head of the department," etc. Mo.St.Ann. § 12126s, p. 6434. These provisions must be read in the light of and made to accord with the further provision in the first act mentioned limiting the powers of the commission "to contract and be

contracted with as authorized agent of the county." The Budget Act clearly applies to the county court, and it follows that it applies also to all agencies of the court. Section 18 of the Budget Act (Mo.St.Ann. § 12126r, p. 6434) expressly declares that, "except as in this section otherwise specified, all offices, departments, courts, institutions, commissions, or other agency spending moneys of the county, shall * * * observe the restrictions set forth in the preceding sections relating to budget procedure and appropriations." The commission under the law is a creature of the court. It is appointed by the court, and is without power to act except with the approval of the court. The appellant was aware of these requirements because it was careful to have the contract sued upon approved by, and spread upon the records of, the court.

The appellant argues that the contracts of the commission would be defeated if the Budget Act were applicable. It points to section 14 of the act (Mo.St.Ann. § 12126n, p. 6434) which provides that after hearings on the proposed budget the county court may revise any items contained therein. The commission may, however, contract subject to that requirement. Its contracts would not be defeated by this provision any more than would be the contracts of any other spending agency of the court.

■ It is also argued that the emergency character of the Commission Act, as set out in section 6 (Laws Mo.1933, p. 214), would be defeated if the Budget Act were applicable. The declaration of emergency is clearly for the purpose of complying with a constitutional requirement in order that the act might take effect immediately upon its passage, and not for the purpose of freeing the commission from observing statutory requirements in incurring contractual obligations. The contract in question was entered into a year after the passage of the Budget Act, and compliance therewith would not necessarily have delayed its progress in the slightest.

■ The appellant further insists that under the Commission Act the commission is a ministerial agency having discretionary power, and that the requirement of competitive bidding, if applied to such an agent in the exercise of its judgment, defeats the power conferred. The argument is clearly unsound. The requirement of competitive bidding is always subject to the qualifica-

tion that the contract must be naturally competitive. A contract for professional services does not for that reason come within the requirements of such a statute. Stephens County v. McCammon, Inc., (Tex.Com.App.) 40 S.W.(2d) 67. The same is true of a contract which is of such character that the contractor is the only person who can enter into it. Los Angeles Dredging Co. v. City of Long Beach, 210 Cal. 348, 291 P. 839, 842, 71 A.L.R. 161; Hurley Water Co. v. Vaughn, 115 Wis. 470, 91 N.W. 971, 973. The doctrine of these cases is not applicable here. It is true that the appellant was the only contractor interviewed that would both drill the wells and furnish the pumps, but there was nothing in the nature of the work that would prevent other contractors from bidding on the plans had there been proper advertising. See Hanick v. Marion County, 312 Mo. 73, 278 S.W. 730. Contracts otherwise competitive are sometimes held to be outside the statute requiring bids because the statute, limited in scope, does not apply to the contract in question. See e. g. New Jersey Suburban Water Co. v. Riordan, 132 A. 318, 319, 4 N.J.Misc. 256; Barnes v. Lehi City, 74 Utah, 321, 279 P. 878, 886. The statute in the instant case, however, provides that "all contracts and purchases" shall be let after competitive bidding. It would be hard to imagine a more inclusive statute. The fact that the Commission Act provides that the commission may make all "necessary contracts" in no way militates against the requirement of competitive bidding where the contract is in its nature competitive.

Finally, the appellant contends that the Commission Act is a special act, and therefore must take preference over the Budget Act, which is general. If there were any repugnancy between the two acts, the contention might have merit. The Commission Act, however, nowhere says that competitive bidding may be dispensed with in contracts made by the commission. The rule is applicable, therefore, that where statutes are in pari materia they are to be construed as one system and governed by one spirit and policy. Moore v. C. & O. Ry. Co., 291 U.S. 205, 214, 54 S.Ct. 402, 78 L.Ed. 755; Kernin v. City of Coquille, 143 Or. 127, 21 P.(2d) 1078, 1080, and Tragessor v. Cooper, 313 Pa. 10, 169 A. 376, 377, are cases analogous to the instant case. In each of the cited cases there existed a general statutory or charter provision pre-scribing a method of letting contracts by competitive bidding. The immediate provision empowering the governmental agency to contract lacked these requirements. It was held, however, that the officers who had made the contracts in question could act in the premises only so long as they kept within the competitive bidding requirements expressed in the general statute or the charter because such requirement constituted an expression of public policy which need not be repeated in the particular statute or charter and that it could not be excluded unless an intent to exclude clearly appeared.

It is clear in this case that it was the intent of the Legislature of Missouri in enacting the County Budget Law and including therein the requirement that "all contracts" should be let upon competitive bidding to declare a public policy. That such a policy is wise is evidenced by the universality of such statutes found in the laws of Congress and of all the state Legislatures. At any rate, it is for the Legislatures and not the courts to pass upon their wisdom.

As the section that requires competitive bidding also requires adequate appropriation and funds to meet the contract obligation and that the contract bear the certification of the accounting officer so stating, what has previously been said as to the application of the first requirement, viz., competitive bidding, applies equally to the other requirement. The applicability of this latter requirement to the contract in question is evidenced by the fact that the County Auditor Act also contains the requirement with reference to expenditures made by the county court, of which the commission is a subordinate branch.

We conclude that the trial court did not err in holding that the County Budget and County Auditor Acts were applicable to the transaction involved herein, and that the failure of the parties to the contract to observe and follow the requirements of these statutes rendered the contract prima facie invalid.

The appellant contends, in the second place, that, even if the requirements of the County Budget and County Auditor Acts with reference to competitive bidding and certification are applicable and were disregarded, the conduct of the county nevertheless was such as to estop it from denying the validity of the contract. The argument in support of this contention is based

upon two propositions: First, that the county in this transaction was exercising its proprietary or corporate and not its governmental powers, and is therefore subject to the principles of estoppel the same as any private corporation; and, second, that the conduct of the county in the premises constituted ratification of the contract, waiver of any irregularities in the making thereof, and therefore estoppel to deny its validity.

Since we hold that the statutes here involved must be read together and that the provisions of the Budget Act are applicable to the transaction in question, it is obvious that it will be advantageous to consider the two propositions together. It is true there are statements in some of the cases to the effect that, where a governmental division acts in a proprietary capacity, it is governed by the same rules that govern a private individual or corporation. See e. g. Illinois Trust & Savings Bank v. City of Arkansas City (C.C.A.8) 76 F. 271, 282, 34 L.R.A. 518; Griffin v. Oklahoma Natural Gas Corporation (C.C.A.10) 37 F.(2d) 545, 548. Such an expression, however, is general in its nature, and when beyond the point involved does not come within the rule of stare decisis. Rathbun v. United States, 295 U.S. 602, 55 S.Ct. 869, 872, 79 L.Ed. 1611. The rule relied upon has application in cases in which a municipality is called upon to respond in damages for injuries caused by the neglect of its servants while performing corporate and ministerial functions as distinguished from those occurring in the performance of governmental duties. City of Galveston v. Rowan (C.C.A.5) 20 F.(2d) 501, 502; Lober v. Kansas City (Mo.Sup.) 74 S.W.(2d) 815. The distinction is also made in determining when municipal officers can bind the municipality beyond the terms of their offices. Illinois Trust & Savings Bank v. City of Arkansas City, supra; Griffin v. Oklahoma Natural Gas Corporation, supra. It may be made in other instances. See City and County of Denver v. Denver Tramway Corporation (C.C.A.8) 23 F.(2d) 287, 299. But it does not follow that any such distinction exists in a case involving a contract made in defiance of legislative commands. Colorado Central Power Co. v. Municipal Power Dev. Co. (D.C.Colo.) 1 F.Supp. 961, 963; Johnson County Sav. Bank v. City of Creston, 212 Iowa, 929, 231 N.W. 705, 237 N.W. 507, 508, 84 A.L.R. 926. The statutes in question were passed to protect the taxpayer from excessive costs. Hillig v. City of St. Louis, 337 Mo. 291, 85 S.W.(2d) 91, 92. The right to be protected is as great when the county contracts in its proprietary capacity as in its governmental capacity.

In the final analysis, therefore, the real question for determination in the present case is whether disregard of the law requiring advertising and competitive bidding and certification by the accounting officer constitute mere irregularities which may be waived or which may be the subject of estoppel, or whether they are mandatory restrictions constituting a limitation of power.

Upon these questions the authorities are numerous and not consistent in every instance, so that it must first be determined what law governs. Counsel for appellant relies upon the decision of this court in the case of Scott County, Ark. v. Advance-Rumley Thresher Co., 288 F. 739. It is true that the language of the opinion in that case does give support to appellant's contention. That case, however, came up from the state of Arkansas, and the decision purports to rest in part upon the decisions of the Supreme Court of that state, and to the extent that such decisions did not control it was based upon decisions of the Supreme Court or upon principles of general law which do not aid us in this case. It is well settled that the extent of liability of a governmental subdivision is a question of local character which is to be determined in the federal courts by the settled decisions of the highest courts of the state. City of Detroit v. Osborne, 135 U. S. 492, 499, 10 S.Ct. 1012, 34 L.Ed. 260; A. L. Greenburg Iron Co. v. City of Abbeville (C.C.A.5) 2 F.(2d) 559, 560; Mathewes v. Fort Utilities Comm. (D.C.E.D.S. C.) 32 F.(2d) 913, 915. And where there is any inconsistency in the opinions of the state court it is the duty of the federal court to follow the later adjudications in preference to the earlier ones. Alexander v. Missouri State Life Ins. Co. (C.C.A.7) 68 F.(2d) 1, 3; Grovey v. Townsend, 295 U.S. 45, 52, 55 S.Ct. 622, 79 L.Ed. 1292, 97 A.L.R. 680.

While there is seeming confusion in some of the decisions of the courts of Missouri with respect to the distinction between what constitutes an irregularity and what constitutes a limitation of power in the construction of statutes authorizing municipal officers to enter into contracts, we believe those courts are clearly commit-

ted to the proposition that failure to observe the provisions requiring competitive bidding and the proper certification of accounting officers renders a contract void and unenforceable. It is held that every person dealing with a public officer in the state is required at his peril to ascertain at the time a contract is entered into that it is within the scope of the authority which the law conferred upon the officer. Edwards v. City of Kirkwood, 147 Mo.App. 599, 127 S.W. 378, 382; Hillside Securities Co. v. Minter, 300 Mo. 380, 254 S.W. 188, 193.

The following Missouri cases illustrate the application of the doctrine of estoppel to governmental divisions where the irregularity complained of was considered not to constitute a lack of power: Whitworth v. Webb City, 204 Mo. 579, 103 S.W. 86; Edwards v. City of Kirkwood, 147 Mo.App. 599, 127 S.W. 378, 382; Wilson v. King's Lake Drainage & Levee District, 257 Mo. 266, 165 S.W. 734, 739; State v. Nelson, 310 Mo. 526, 275 S.W. 927, 930.

In none of the foregoing cases was the question of competitive bidding or proper certification of funds involved. When these and similar requirements have been defied and ignored, contracts of public officers in Missouri have generally been held to be void and unenforceable as ultra vires. In the following cases the doctrine of estoppel or ratification has been denied when claimed as a basis for allowing recovery for labor or material furnished in pursuance of a contract, void in its inception because of a failure to comply with statutory or constitutional requirements: Heidelberg v. St. Francois County, 100 Mo. 69, 12 S. W. 914, 915; Wheeler v. City of Poplar Bluff, 149 Mo. 36, 49 S.W. 1088, 1090; Anderson v. Ripley County, 181 Mo. 46, 80 S. W. 263, 265; Phillips v. Butler County, 187 Mo. 698, 86 S.W. 231, 235; Seaman v. Cap-Au-Gris Levee District, 219 Mo. 1, 117 S.W. 1084, 1088; Cook & Son v. City of Cameron, 144 Mo.App. 137, 128 S.W. 269; Likes v. City of Rolla, 184 Mo.App. 296, 167 S.W. 645; Dearmont v. Mound City (Mo.App.) 278 S.W. 802.

In Mullins v. Kansas City, 268 Mo. 444, 188 S.W. 193, 195, a statute requiring that all contracts executed by governmental divisions "be made upon a consideration wholly to be performed or executed subsequent to the making of the contract" was not complied with. In considering the question of estoppel after the work in question had been done and accepted by the city, the court made this inquiry: "But will such a doctrine [i. e. estoppel] apply in the very teeth of a public statute, which expressly forbids the making of the promise, or contract, in the manner in which it was made here?"

The court answered the query in the negative, saying: "It is plain that to allow such a doctrine upon a contemporaneous matter to be successfully asserted in the teeth of a statute which forbids, and of which statute plaintiff must be held to know, would be against public policy. Statutes and charter provisions constitute powers of attorney to the officers of municipalities, beyond which such officers may not go. Those dealing with such agents of municipalities must be held to know these statutory and charter powers, which effectually limit such officers' powers and radius of action. Officers of municipalities are not general agents; they are special agents, whose duties are set forth in the statutes which create them and which define their powers, and of these statutes, and therefore of these officers' powers, the public which deals with them must take notice and govern themselves accordingly. Lamar Tp. v. Lamar, 261 Mo. 171, 169 S.W. 12 [Ann. Cas.1916D, 740]; Morrow v. Surber, 97 Mo. 155, 11 S.W. 48. Vain and futile would Constitution and statutes and charter be, if any officer of the state, or of a county, or of a city or other municipality, could follow them only when he saw fit. If by estoppel such salutary provisions, enacted with wise foresight as checks upon extravagance and dishonesty, can be utterly abrogated at will by any officer, such provisions then subserve no purpose, and the public corporation has no earthly protection against either greed or graft. Likes v. City of Rolla, 184 Mo.App. 296, 167 S. W. 645; Cook v. Cameron, 144 Mo.App. 137, 128 S.W. 269; State ex rel. v. Dierkes, 214 Mo. 592, 113 S.W. 1081."

Warrants issued in payment for work done under a void contract have been declared void in a taxpayer's suit. Hawkins v. Cox, 334 Mo. 640, 66 S.W.(2d) 539; Hillside Securities Co. v. Minter, 300 Mo. 380, 254 S.W. 188, 189. And in Hanick v. Marion County, 312 Mo. 73, 278 S.W. 730, 732, recovery on contract fully completed by the contractor (plaintiff) was denied because it was not let upon competitive bids. In West Virginia Coal Co. v. City of St. Louis, 324 Mo. 968, 25 S.W.(2d) 466, 472,

recovery was denied for breach of contract which was not let on competitive bidding.

This court early refused to apply the doctrine of estoppel in such a case as this. In City of Fort Scott v. W. G. Eads Brokerage Co. (C.C.A.) 117 F. 51, 54, the suit was based upon a contract with the city in which it was agreed to compensate the plaintiff for services in investing the city sinking fund in bonds. The statute restricted the investment to the purchase of such bonds upon competitive bidding after prescribed advertisement. The law was ignored in making the contract. It was held that, although the city had received and retained the benefits of the agreement, the plaintiff was charged with knowledge that the city had no power to make the particular contract, and that therefore the doctrine of estoppel was inapplicable. The rule so applied is in harmony with the weight of authority. Kernin v. City of Coquille, 143 Or. 127, 21 P.(2d) 1078, 1081; City of Lancaster v. Miller, 58 Ohio St. 558, 51 N.E. 52, 55; Ludwig Hommel & Co. v. Inc. Village of Woodsfield, 115 Ohio St. 675, 155 N.E. 386, 389. See, also, Horrabin Paving Co. v. City of Creston (Iowa) 262 N.W. 480, 485; Los Angeles Dredging Co. v. Long Beach, 210 Cal. 348, 291 P. 839, 844, 71 A.L.R. 161; 3 McQuillin on Municipal Corporations (2d Ed.) § 1283, p. 849.

In view of the long line of decisions of the highest courts of the state of Missouri, we are constrained to hold that the doctrine of ratification and estoppel does not apply in this case. We appreciate that this conclusion operates to effect an apparent hardship upon the appellant. Upon this we can add nothing to what the Missouri court said in the case of Book v. Earl, 87 Mo. 246, a case in which the requirements of the statutes had not been observed in the letting of a contract. In the cited case the court said: "It is said that this ruling will work a great hardship, inasmuch as the work contracted for was done according to the contract, was worth the price agreed to be paid, and was accepted and has ever since been used by the county. This may be so, but we are powerless to relieve against it. It was said in Wolcott v. Lawrence County, 26 Mo. 272, when a like case of hardship was before the court: 'That the law is a warrant of attorney to the county court. All its provisions are plain, and the contractor, before he undertakes the work, as he deals with an agent whose powers and duties are prescribed, ought to see that the agent is pursuing his authority; for the agent cannot bind the county, except as it is commanded or permitted to do. * * * If any effect is to be given to the law at all, its plain directions must be followed, and to allow a manifest departure from them, would not only be a violation of an established rule that governs the relations of principal and agent, but would remove all of the restrictions which the law has imposed upon county courts in contracting debts to be paid by the county.'"

We have read and considered the cases cited in the very able brief of counsel for appellant, but in our opinion they are not controlling. To distinguish them severally would unduly extend this opinion without serving any useful purpose.

For the reasons stated, the judgment and decree appealed from is affirmed.

STONE, Circuit Judge.

I fully concur in the result announced in the opinion of Judge THOMAS, and I concur in the opinion except that I prefer to state a somewhat different view as to one phase of the issue of estoppel. As stated by Judge THOMAS, this issue is to be determined from the Missouri decisions. It seems to me that those decisions declare a rule which governs the situation here.

The situation is that section 19 of the Budget Act (Mo.St.Ann. § 12126s, p. 6434) expressly states that "no contract or order imposing any financial obligation on the county *shall be binding on the county unless* * * * there is a balance otherwise unencumbered to the credit of the appropriation to which the same is to be charged and a cash balance otherwise unencumbered in the treasury to the credit of the fund from which payment is to be made, each sufficient to meet the obligation thereby incurred *and unless* such contract or order bear the certification of the accounting officer so stating." (Italics added.) Concededly, none of these quoted requirements was here present.

The Missouri rule is that, where a statute expressly states that, unless certain things are done, a contract by a political subdivision or a municipal corporation shall be invalid, there can be no estoppel urged to support the contract. Mullins v. Kansas City, 268 Mo. 444, 459, 188 S.W. 193; Seaman v. Levee District, 219 Mo. 1, 26, 117 S.W. 1084; Edwards v. Kirkwood, 147

Mo.App. 599, 614, 127 S.W. 378; W. W. Cook & Son v. City of Cameron, 144 Mo. App. 137, 142, 128 S.W. 269, 270; also see Phillips v. Butler County, 187 Mo. 698, 86 S.W. 231.

Applying this rule of law to the situation here must result in denying the estoppel urged by appellant.