

# The Attorney General of Texas

February 3, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Henry Wade
Criminal District Attorney
Condemnation Section
6th Floor, Records Building
Dallas, Texas    75202

Opinion No. MW-439

Re:    Competitive    bidding
requirements

Dear Mr. Wade:

You  ask  whether  article  1659a,  V.T.C.S.,  or  article  2368a,
V.T.C.S.,  require  four  categories  of  items  to  be  obtained  through  the
competitive bidding process.   The first category consists of:

> Certain materials and supplies, other than voting
> machines, and the printing of those materials and
> supplies which are required in the conduct of an
> election whether or not procured by the 'election
> board' or 'the authority holding the election,'
> i.e., the county via the commissioners court.

Article 1659a provides in pertinent part as follows:

> In   all   counties   having   a   population   of...
> (800,000) or more... supplies of every kind, road
> and bridge material, or any other material, for
> the use of said county, or any of its officers,
> departments, or institutions, must be purchased on
> competitive bids, the contract to be awarded to
> the    party    who,    in    the    judgment    of    the
> Commissioners Court, has submitted the lowest and
> best bid....

Although  Attorney  General  Opinion  H-1262  (1978)  incorrectly
states  that  this  statute  applies  only  where  the  amount  of  purchase
exceeds $2000 (merely the "advertising" provisions so provide), it
furnishes  support  for  our  conclusion  that  the  items  you  describe
constitute  "supplies"  or  "materials"  within  the  meaning  of  article
1659a.

Article 7.07 of the Election Code provides that:

> In general and special elections for election of officers who are regularly elected at the general election provided for in Section 9 of this code, the county judge, county clerk, sheriff, and county chairman of each political party which is required to nominate candidates by primary election shall constitute a board, a majority of whom shall act to provide the supplies necessary to hold and conduct the election. In all other elections held by the county, the board shall be composed of the county judge, county clerk and sheriff. As used herein, the words 'supplies' means all supplies and equipment needed for the election, including, without limitation, ballot boxes, voting booths, guard rails, voting machines, and other voting equipment.... The board shall file with the commissioners court a written report of their action as to supplies furnished by the county, giving a detailed statement of the expenses incurred in procuring such supplies. (Emphasis added).

Cf. Patten v. Concho County, 196 S.W.2d 833 (Tex. Civ. App. - Austin 1946, no writ) (road machinery not "supplies"); Attorney General Opinion H-977 (auditor's duties). Article 7.12 of the Election Code requires counties to pay for these election supplies, except in municipal and school elections.

Article 2359, V.T.C.S., provides:

> The commissioners court shall advertise, at least once in every two years, for sealed proposals to furnish blank books, legal blanks, stationery and such other printing as may be required for the county for the term of such contract, and shall receive separate bids for the different classes hereinafter designated.... (Emphasis added).

Article 2362, V.T.C.S., designates these "different classes":

> The stationery shall be divided into four classes: ...Class 'D' poll tax receipts and all election supplies of whatever nature and description, not furnished by the State.... (Emphasis added).

See also V.T.C.S. art. 2368a (county contracts of $3,000 or more).

Statutes dealing with the same subject matter are to be read together and harmonized, if possible, so that effect may be given to each one. Calvert v. Fort Worth National Bank, 356 S.W.2d 918 (Tex. 1962); Texas State Board of Pharmacy v. Kittman, 550 S.W.2d 104 (Tex. Civ. App. - Tyler 1977, no writ). When articles 1659a and 2368a and the other statutes cited above are considered together, it becomes apparent that: (1) competitive bids must be taken on the election supplies you inquire about as per the terms of these statutes; and (2) the commissioners court is responsible for taking these bids and determining which one is most satisfactory.

It is true that article 7.07 directs the county election board to "provide the supplies necessary to hold and conduct the election," but we find nothing in this provision or in the remainder of the statute which warrants the conclusion that the other statutes cited above, which place the responsibility for taking bids on election supplies in the hands of the commissioners court, have been impliedly repealed. On the contrary, we believe article 7.07 is readily reconciled with those statutes. The county election board is to "provide" needed election supplies, but in so doing, it is to deal with the suppliers selected by the commissioners court through the bidding process. See Attorney General Opinions M-302, M-233 (1968).

Your second inquiry concerns:

Items purchased from the 'profits' of the commissary operation in the county jail.

It is our understanding that neither the county nor the sheriff actually operates the jail commissary in Dallas county. A private vendor does so pursuant to a negotiated arrangement whereby the vendor pays a fixed sum (based upon prisoner population) and a percentage of the receipts for the concession. The purchase of items for sale, the prices to be charged for them, and other similar management decisions are left to the concessionaire. The amounts realized from the vendor are not "profits," strictly speaking, but "income" in the nature of rental income. See Dodson v. Marshall, 118 S.W.2d 621 (Tex. Civ. App. - Waco 1938, writ dism'd).

However it might be characterized, we think money realized by the county or sheriff from the establishment of a jail commissary is public money subject to public accountability and statutory safeguards respecting its expenditure. Cf. Code Crim. Proc. art. 1040 (sheriff accountable for "net profits" realized from support and maintenance of prisoners).

In the course of concluding that a jail commissary could be operated on a "profit-making" basis by a county sheriff, Attorney General Opinion MW-143 (1980) used the term "profits" to signify the

net proceeds of sales made to prisoners from a sheriff-operated commissary. The opinion indicated that immediate commissary income might properly exceed immediate costs, so long as the "profits" were reinvested in the commissary operation so as to be devoted to the benefit, education and welfare of jail inmates (by expanding the amenities available to them). See Attorney General Opinions H-639 (1975); C-67 (1963). Cf. City of Bryan v. A. & M. Consolidated Independent School District, 179 S.W.2d 987 (Tex. Civ. App. - Waco 1944), aff'd, 184 S.W.2d 914 (Tex. 1945). The opinion did not suggest that purchases made with such "profits" were beyond the reach of competitive bidding statutes.

Without passing on the propriety of the vendor-operated jail commissary now extant in Dallas County, we are of the opinion that purchases made with money realized from the establishment of a jail commissary are subject to the provisions of article 1659a, V.T.C.S. See also V.T.C.S. art. 2368a.

As noted above, article 1659a requires that "supplies of every kind... for the use of said county or any of its officers, departments or institutions, must be purchased on competitive bids." The contract is to be awarded to "the party who, in the judgment of the commissioners court, has submitted the lowest and best bid." (Emphasis added).

You suggest that article 1659a is inapplicable because article 5116, V.T.C.S., makes the sheriff -- not the commissioners court -- statutorily responsible for the operation of the jail. A similar argument was made to the Texas Supreme Court in Anderson v. Wood, 152 S.W.2d 152 (Tex. 1941). There it was claimed on behalf of the sheriff that the commissioners court had no power to control contracts respecting the operation of the courthouse because article 6872, V.T.C.S., provided that "[s]heriffs shall have charge and control of the courthouses..." subject to regulations prescribed by the commissioners court. Citing two cases which concerned the purchase of disinfectant for jails, Germo Manufacturing Company v. Coleman County, 184 S.W. 1063 (Tex. Civ. App. - Austin 1916, no writ) and American Disinfectant Company v. Freestone County, 193 S.W. 440 (Tex. Civ. App. - Dallas 1917, no writ), the court held the statute gave the sheriff no authority to contract for the county independent of the contracting authority of the commissioners court. Cf. Attorney General Opinion H-1190 (1978). We do not believe article 5116, V.T.C.S., divests the commissioners court of authority in the matter.

Early court cases and opinions of the attorney general dealing with the purchase and supply of food for prisoners are inapposite for two reasons. First, article 5115, V.T.C.S., was later amended, in 1957, to make the commissioners court responsible for assuring "that food is prepared and served in a palatable and sanitary manner and

according to good dietary practices and of a quality to maintain good health," and article 5115.1, V.T.C.S., creating the commission on jail standards and (under section 11) making the commissioners court as well as the sheriff responsible for compliance with the rules and regulations of the commission, was enacted in 1975. The establishment of a jail commissary is the subject of such a rule. See Attorney General Opinion MW-143 (1980). Second, although statutory authority has long existed for sheriffs to provide food for prisoners from an allowance made by the commissioners court, there is no statute now that allows the sheriff to spend at his discretion any "profits" realized from the jail operation. See V.T.C.S. art. 1040; Attorney General Opinion M-1220 (1972). Cf. Wichita County v. Vance, 217 S.W.2d 702 (Tex. Civ. App. - Fort Worth 1949, writ ref'd n.r.e.) (jail kitchen); McKinney v. Collingsworth County, 159 S.W.2d 234 (Tex. Civ. App. - Amarillo 1942, no writ) (allowances and "profits"); Attorney General Opinions C-567 (1965) (furnishing meals); V-1232 (1951) (contracts for meals); O-1228 (1939) (feeding prisoners); O-329 (1939) (purchase of food).

In our opinion, purchases made from proceeds realized by the county from the jail commissary operation in Dallas County are subject to the competitive bidding statutes. See V.T.C.S. art. 1659a. Cf. V.T.C.S. art. 2368a.

You also ask about:

> Supplies and/or equipment purchased by the criminal district attorney from the 'hot check fund' established by article 53.08 of the Code of Criminal Procedure.

Article 53.08 of the Code of Criminal Procedure authorizes a county attorney, district attorney, or criminal district attorney to collect a fee if his office processes a hot check under certain circumstances. It further provides that:

> (e) Fees collected under this article shall be deposited in the county treasury in a special fund to be administered by the county attorney, district attorney, or criminal district attorney. Expenditures from this fund shall be at the sole discretion of the attorney, and may be used only to defray the salaries and expenses of the prosecutor's office.... (Emphasis added).

This statute creates a special fund which is in the county treasury, but which is segregated from other county funds and earmarked for a specific purpose. More importantly, the statute states that the fund is to be administered by county attorneys,

district attorneys, and criminal district attorneys, and that, within the limits set out therein, expenditures from the fund are to be made at their sole discretion. The express enumeration of particular persons or things in a statute is tantamount to an express exclusion of all others. Ex parte McIver, 586 S.W.2d 851 (Tex. Crim. App. 1979). Thus, by virtue of the express language of the statute, the hot check fund is explicitly placed beyond the reach of the commissioners court.

By its terms, article 2368a applies only where a county acts "through its Commissioners Court." It follows, in our opinion, that the statute is not triggered unless, in making a specific purchase, a county acts through its commissioners court. Article 1659a does not contain this precise language, but it does state that contracts for the purchase of supplies and materials are to be awarded to the party who "in the judgment of the Commissioners Court" submits the lowest and best bid. This is sufficient to convince us that, like article 2368a, article 1659a does not come into play where a commissioners court is not involved with the purchase in question.

We have noted that article 53.08 gives the exclusive right to administer the hot check fund, and to make purchases from it, to county attorneys, district attorneys, and criminal district attorneys. Because commissioners courts are without any right to administer the fund or to be involved in making expenditures from it, we conclude, for the reasons set forth above, that articles 2368a and 1659a are inapplicable in this purchasing context. In this respect, it should be noted that to conclude that these statutes are applicable is to give commissioners courts an indirect means of controlling the fund, a result contrary to the express terms of article 53.08 and, therefore, to the legislature's intent. A commissioners court could, for example, refuse to accept any or all bids in a particular instance and thus interfere with the exclusive right of the designated individuals to administer the fund and to determine when, for what purposes, and under what circumstances expenditures will be made from it.

Your final category of concern is:

> [The] purchase of law books and law book service, i.e., pocket parts and/or new volumes, where these items are available from only one publishing house.

You suggest that such items are exempt from competitive bidding statutes because they are "professional services" rather than "supplies" or "materials." We disagree. See V.T.C.S. art. 1702h; Attorney General Opinion MW-399 (1981). Compare Attorney General Opinion MW-344 (1981) with Attorney General Opinion MW-342 (1981). You also suggest that the fact that certain books and book services

are obtainable only from the source that has a copyright on them is sufficient to render the competitive bidding statutes inapplicable. Support for the latter argument is found in cases from other jurisdictions which hold that bidding statutes are to be read in light of the reason for their enactment, and that they have no application where the nature of the item to be bought is such that competitive bidding is impractical or where the contract to be made would not naturally be competitive. See, e.g., Layne-Western Company v. Buchannan County, 85 F.2d 343 (8th Cir. 1936); Whelan v. New Jersey Power & Light Company, 212 A.2d 136 (N.J. 1965); Schwartz v. Nagel Tires, Inc. v. Board of Chosen Freeholders, 69 A.2d 885 (N.J. Super. Ct. App. Div. 1949).

The only Texas case we have found that deals with a patented product, however, is Limestone County v. Knox, 234 S.W. 131 (Tex. Civ. App. - Dallas 1921, no writ), which involved a contract for patented machinery. The argument was there made that the subject matter of the contract was such that:

> competitive proposals would work in incongruity,
> would be unavailing as affecting the final result,
> and would not produce any advantage....

Id. at 132. Nevertheless, the court concluded that:

> The language of [article 2368a, V.T.C.S.] is clear, unambiguous, and emphatic. The legislative intent and purpose is manifest, and the law should be observed and given full effect by the commissioners' courts of the state... The consequences of the failure on the part of the commissioners' court to comply with... article 2368a... cannot be escaped on the theory... that the subject-matter of the contract of purchase was a 'patented product in the nature of a monopoly...' The fact that the 'subject-matter of the contract is a patented product' does not excuse a failure to comply with the terms of the statute. It is not so provided in the statute, and we may not look elsewhere for such an excuse.

The only exceptions to the competitive bidding requirements are those contained in the statutes themselves. We are not in a position to declare the Limestone case obsolete, and we must therefore conclude that under current Texas law, the competitive bidding requirements of articles 1659a and 2368a cannot be avoided on the theory that only one supplier of a desired product exists.

For these reasons, we conclude that a county must invite bids on the books and services you describe.

## S U M M A R Y

Dallas County is required to take competitive bids on materials, supplies, and printing used in the conduct of an election. The competitive bidding statutes also apply to purchases made with profits from the commissary operation in the county jail and to purchases of the indicated law books and law book services. Competitive bids need not be obtained on items purchased with funds available under article 53.08 of the Code of Criminal Procedure.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Robert Gauss
Rick Gilpin